JUSTICE COTTER
delivered the Opinion of the Court.
¶1 The Medical Marijuana Growers Association, Inc., Courier 1, Courier 2, Caregiver 1, Caregiver 2, and Caregiver 3 (collectively referred to as Plaintiffs) appeal from the Order and Rationale on Defendant’s Motion for Summary Judgment (Order), entered by the Eleventh Judicial District Court of Flathead County, Montana. The Order determined that caregivers, as providers of medical marijuana to qualifying patients under Montana’s 2009 Medical Marijuana Act, were not permitted to engage in marijuana transactions with or provide cultivation services to other caregivers or their agents or contractors.
¶2 We affirm.
ISSUES
¶3 Plaintiffs raise two issues on appeal. We restate the issues as follows:
¶4 Does Montana’s 2009 Medical Marijuana Act authorize caregivers to either exchange marijuana for purposes of supplying qualified patients with medical marijuana, or provide cultivation services to other caregivers for purposes of supplying qualified patients with medical marijuana?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Montana’s Medical Marijuana Act (MMA), approved when voters passed the ballot initiative 1-148 on November 2, 2004, allowed for the limited use of medical marijuana. The MMA was codified in §§ 50-46-101 to -210, MCA (2005).[1] Under the 2009 statute, which was in effect at the time the alleged offenses took place, a “qualifying patient”-one with a “debilitating medical condition” and registered with the Department of Public Health and Human Services (DPHHS)-was allowed the limited use of marijuana to alleviate the symptoms or *348 effects of the condition. Section 50-46-102(3), (5)(a), (8), (9), MCA.
¶6 Under § 50-46-102(l)(a), MCA, each qualifying patient could have one “caregiver” who was responsible for managing the well-being of the patient with respect to the medical use of marijuana. A caregiver was required to register with DPHHS and sign a statement “agreeing to provide marijuana only to qualifying patients who have named the applicant as caregiver.” Section 50-46-103(4)(a)(i), MCA. A caregiver was not allowed “to engage in the use of marijuana or to use paraphernalia for any purpose other than cultivating, manufacturing, delivering, transferring, or transporting marijuana for medical use by a qualifying patient.” Section 50-46-103(4)(a)(ii), MCA. A caregiver was also not allowed to possess more than six marijuana plants and one ounce of usable marijuana, nor was a caregiver allowed to acquire, possess, cultivate, manufacture, deliver, transfer, or transport marijuana in excess of that amount. Section 50-46-201(l)(a), (2), MCA. Caregivers who complied with the 2009 MMA were provided legal protections against arrest, prosecution, penalties, or denial of rights or privileges. Section 50-46-201(1), MCA. The 2009 MMA also allowed a caregiver to “receive reasonable compensation for services provided to assist with a qualifying patient’s medical use of marijuana.” Section 50-46-103(4)(c), MCA.
¶7 The Medical Marijuana Growers Association, Inc. (Growers Association)[2] is a non-profit corporation organized in Montana with a membership list representing approximately half of the caregivers and patients in Montana. Growers Association apparently lobbies the Montana Legislature about legal matters in connection to the MMA. Courier 1 is a resident and caregiver in Flathead County and Courier 2 is a resident and patient in Flathead County. Caregivers 1 and 2 are residents and caregivers in Flathead County and Caregiver 3 is a resident and caregiver in Cascade County.
¶8 On March 23, 2011, Plaintiffs filed a complaint in Montana’s Flathead County District Court against the County Attorney, Ed Corrigan (Corrigan), seeking declaratory judgment that certain challenged activities could lawfully be performed by caregivers under Montana’s 2009 MMA. Plaintiffs alleged in their complaint that Courier 1 and Courier 2 had been charged- in criminal cases with *349 possession of a dangerous drug with intent to distribute, in violation of § 45-9-103, MCA, for allegedly possessing and transporting marijuana on behalf of Caregiver 3.[3] They further alleged that Caregivers 1, 2, and 3 are “potential witnesses and participant actors in the criminal cases,” although none of the Caregivers faced criminal charges at the time.
¶9 In their complaint Plaintiffs sought a determination that the 2009 MMA allowed a caregiver to “deliver, transport or transfer marijuana and its paraphernalia to another caregiver” or to another caregiver through an agent, and that it allowed a caregiver to “cultivate and manufacture marijuana as an agent or contractor for another caregiver.” Without these allowances, Plaintiffs argued, they would be unable to comply with their duties as caregivers under the MMA. The individual Plaintiffs sought to remain anonymous so as to avoid self-incrimination based on the statements made in this action and to preserve their right to remain silent in the event of prosecution and conviction.
¶10 Corrigan filed an answer, and on April 19, 2011, he moved for summary judgment, arguing that the plain language of the 2009 MMA makes clear that caregiver-to-caregiver transactions are not permitted. Corrigan cited the requirement that caregivers agree that they will “provide [medical] marijuana only to qualifying patients who have named the applicant as caregiver,” and as such, the extensive statutory interpretation requested by the Plaintiffs was unnecessary. Section 50-46-103(4)(a)(i), MCA. Plaintiffs responded with a motion for summary judgment and an accompanying brief, and Corrigan filed a reply brief on June 1, 2011.
¶11 The District Court heard oral argument on July 6,2011, and in its Order granted Corrigan’s motion for summary judgment on July 21, 2011. The court concluded that the 2009 MMA “does not permit a caregiver to deliver, transport, or transfer marijuana and its paraphernalia to another caregiver, either individually or through an agent or contractor; nor does it permit a caregiver to cultivate and manufacture marijuana as an agent or contractor for another caregiver.” The court entered judgment to the same effect on August 17, 2011, dismissing the case and noting the Order’s denial of *350 Corrigan’s request for fees and costs. Plaintiffs appealed.
¶12 After the appellate briefs were filed, this Court ordered supplemental briefing. We noted that the new Montana Marijuana Act (2011 MMA), Title 50, chapter 46, part 3, MCA (2011), took effect on July 1,2011.[4] It repealed the 2009 MMA and set forth new regulations and requirements for participants in the medical marijuana program. We directed the parties to submit briefs addressing the possibility that the declaratory action was moot as a consequence of the repeal of the 2009 MMA. The parties submitted the requested briefs.
STANDARD OF REVIEW
¶13 This Court reviews a district court’s grant of summary judgment de novo, applying the criteria in M. R. Civ. P. 56. Wiser v. Mont. Bd. of Dentistry, 2011 MT 56, ¶ 6, 360 Mont. 1, 251 P.3d 675 (citations omitted). “Summary judgment may be granted only when there is a complete absence of genuine issues of material fact and the moving party is entitled to judgment as a matter of law.” Wiser, ¶ 6 (quoting Lorang v. Fortis Ins. Co., 2008 MT 252, ¶ 37, 345 Mont. 12, 192 P.3d 186).
¶14 This Court reviews a district court’s interpretation of law pertaining to a declaratory judgment ruling for correctness. Wrigg v. Junkermier, Clark, Campanella, Stevens, P.C., 2011 MT 290, ¶ 9, 362 Mont. 496, 265 P.3d 646 (citing In re Estate of Marchwick, 2010 MT 129, ¶ 8, 356 Mont. 385, 234 P.3d 879).
DISCUSSION
¶15 Does Montana’s 2009 Medical Marijuana Act authorize caregivers to either exchange marijuana for purposes of supplying qualified patients with medical marijuana, or provide cultivation services to other caregivers for purposes of supplying qualified patients with medical marijuana?
¶16 On appeal, Plaintiffs seek a determination that the 2009 MMA allows a caregiver to “dispense marijuana to his own patients, [and] perform other services such as acquisition, possession, cultivation, manufacture, delivery, transfer, or transportation with respect to any qualifying patient, including to a caregiver on behalf of another qualifying patient.” Plaintiffs argue that this appeal is not moot, as the repeal of the 2009 MMA does not eliminate the possibility of criminal *351 prosecution under the 2009 MMA against those involved in this case. ¶17 Corrigan argues that this matter is moot, as the 2011 MMA’s “repeal and overhaul of the 2009 MMA expressly prohibits caregiver to caregiver transactions,” and thus the situation in question cannot be repeated. Corrigan also argues that the Plaintiffs are not challenging the constitutionality of the criminal statute under which they were charged, and that there is no imminent threat to their constitutional rights. Corrigan further states that if the right to appeal their criminal cases was preserved by Courier 1 or Courier 2, they can proceed with an appeal, and that the possibility of future criminal charges against the other Plaintiffs is highly speculative, as they have not been charged with criminal offenses related to medical marijuana and the record does not reflect they likely will be charged.
¶18 We address mootness first, as “[m]ootness is a threshold issue which must be resolved before addressing the underlying dispute.” Povsha v. City of Billings, 2007 MT 353, ¶ 19, 340 Mont. 346, 174 P.3d 515. We have “consistently held that ‘a moot question is one which existed once but because of an event or happening, it has ceased to exist and no longer presents an actual controversy.’Povsha, ¶ 19 (quoting Skinner Enters., Inc. v. Lewis and Clark City-Co. Health Dept., 1999 MT 106, ¶ 12, 294 Mont. 310, 980 P.2d 1049). A case becomes moot for the purposes of appeal when “by a change of circumstances prior to the appellate decision, the case has lost any practical purpose for the parties, [such as when] the grievance that gave rise to the case has been eliminated.” Povsha, ¶ 19 (quoting In re T.J.F., 229 Mont. 473, 475, 747 P.2d 1356, 1357 (1987)).
¶19 The Plaintiffs argue against a finding that the 2011 MMA moots their request for declaratory relief, arguing that they could still be charged or their convictions upheld under the 2009 law. They argue that under § 1-2-205, MCA, those who allegedly violated the 2009 MMA while it was in effect could face prosecution for a criminal offense under the 2009 MMA, even though it has since been repealed. Section 1-2-205, MCA, states:
The repeal of any law creating a criminal offense does not constitute a bar to an indictment or information and the punishment of an act already committed in violation of the law so repealed unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act.
¶20 We have held that “[p]ersons alleged to have committed criminal offenses must be charged with violating the law in effect at the time *352 the crime was committed.” State v. Daniels, 2003 MT 30, ¶ 17, 314 Mont. 208, 64 P.3d 104 (citing State v. Cline, 170 Mont. 520, 532, 555 P.2d 724, 732 (1976)). “Furthermore, a change in the definition of an offense does not affect acts committed prior to the effective date.” Daniels, ¶ 17. Citing § 1-2-205, MCA, Daniels held that the defendant, who committed his offense between January 1996 and June 1999 and was charged in November 1999, was properly charged and convicted under the definition of the offense in effect at the time he committed the crime, though the statutory definition of the offense had changed on October 1,1999. Daniels, ¶¶ 5,13,17,18. This necessarily imparts that the law in effect at the time of the commission of the crime controls throughout the prosecution of the crime.
¶21 The 2011 MMA does not expressly bar an indictment or information from being brought under the 2009 law. The alleged events involving the Plaintiffs took place on approximately February 4, 2011, and thus would be subject to prosecution under the 2009 MMA, as the 2011 MMA was not effective until July 1, 2011. Because a felony prosecution may be commenced up to five years from the date of the alleged offense and prosecuting attorneys have discretion as to what and who they charge, the caregivers could theoretically still be charged through February 2016 with felony offenses under the 2009 MMA. Section 45-l-205(2)(a), MCA; State v. Lemmon, 214 Mont. 121, 126, 692 P.2d 455, 457-58 (1984). Thus, the issue on appeal has not been mooted by repeal of the 2009 MMA.
¶22 In response to Corrigan’s contention that the relief sought is speculative and not justiciable, Plaintiffs argue that this is an appropriate case for relief under the Uniform Declaratory Judgments Act (UDJA), §§ 27-8-101 to -313, MCA. The purpose of the UDJA is “to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.” Section 27-8-102, MCA.
¶23 The UDJA, addressing the scope of power to render a declaratory judgment, states:
Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.
*353 Section 27-8-201, MCA. As for who may obtain a declaratory judgment, the UDJA states:
Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
Section 27-8-202, MCA. Because Plaintiffs deem themselves insecure with respect to their legal status vis a vis the 2009 MMA, at least two of the Plaintiffs have already faced criminal charges, and the UDJA allows a court to declare their status even though no further relief is claimed, we are constrained to agree that Plaintiffs may seek the relief requested under the UDJA. We therefore conclude the controversy is justiciable, and turn to the merits of Plaintiffs’ arguments.
¶24 We are asked to determine whether the 2009 MMA authorizes caregivers, for purposes of supplying qualified patients with medical marijuana, to exchange marijuana with or provide cultivation services to other caregivers. To do so, we first look to the plain language of the statute as a whole to determine if it is clear and unambiguous. Mont. Sports Shooting Assn. v. State, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. We will ascertain and declare what is in the terms or their substance, and we will not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.
¶25 Marijuana is a Schedule I controlled substance under § 50-32-222(4)(t), MCA. It is considered a dangerous drug under §§ 50-32-101(6), -202, MCA, and is generally illegal to distribute or possess, pursuant to §§ 45-9-101, -102, MCA. Distribution includes selling, bartering, exchanging, giving away, or offering to sell, barter, exchange, or give away. Section 45-9-101(1), MCA. The 2009 MMA provides exceptions to the illegality of distribution and possession, establishing certain privileges for those in compliance with its provisions.
¶26 The 2009 MMA defines a “caregiver” as “an individual, 18 years of age or older who has agreed to undertake responsibility for managing the well-being of a person with respect to the medical use of marijuana. A qualifying patient may have only one caregiver at any one time.” Section 50-46-102(l)(a), MCA. A “qualifying patient or caregiver is presumed to be engaged in the medical use of marijuana if the qualifying patient or caregiver is in possession of a registry *354 identification card.” Section 50-46-201(3)(a)(i), MCA. A registry identification card is a document issued by DPHHS that identifies a person as a qualifying patient or a caregiver. Section 50-46-102(9), MCA. In order to obtain a registry identification card, the caregiver is required to sign a statement, as the caregiver for the qualifying patient:
(i) agreeing to provide marijuana only to qualifying patients who have named the applicant as caregiver; and
(ii) acknowledging that possession of the registry identification card does not allow the caregiver to engage in the use of marijuana or to use paraphernalia for any purpose other than cultivating, manufacturing, delivering, transferring, or transporting marijuana for medical use by a qualifying patient.
Section 50-46-103(4)(a), MCA (emphasis added).
¶27 We find the plain language of this statute clear and unambiguous. A caregiver is authorized to provide marijuana to qualifying patients only. The 2009 MMA does not provide for the transfer of marijuana or paraphernalia from caregiver to caregiver or among their agents, nor is there a provision allowing for a caregiver to cultivate marijuana for other caregivers or for their agents or contractors. We will not read or insert these provisions into the statute. We find that the specific provision that a caregiver may provide marijuana only to qualifying patients specifically prohibits the privileges and declarations that the Plaintiffs seek. As the District Court correctly stated,
[T]he Court must point out a serious impediment to the relief Plaintiffs are seeking: All of Plaintiffs’ arguments are predicated on the assumption that the Act is ambiguous with respect to whom caregivers may and may not supply with marijuana. Were there such an ambiguity, Plaintiffs’ arguments, to varying extents, might go a long ways toward resolving it. However, no such ambiguity exists; rather, the clear and unambiguous language of [the] Act permits caregivers “to provide marijuana only to qualifying patients who have named the applicant as caregiver.” § 103(4)(a)(ii). The intention evinced by this language is straightforward. Entertaining Plaintiffs’ invitation to engage in further interpretation of the Act would necessarily entail turning a blind eye to one of its explicit provisions. This the Court may not do.
¶28 Plaintiffs argue that such a restrictive reading of the 2009 MMA renders performance under the MMA an impossibility, as caregivers must be able to initially acquire their marijuana from some source in *355 order to commence cultivation and fulfill their duties as caregivers. We decline the invitation to engage in the expansive interpretation of the 2009 MMA urged by Plaintiffs, as it is simply unsupportable under the plain language of the statute.
¶29 Therefore, we affirm the determination of the District Court that the 2009 MMA does not permit the exchange of marijuana among caregivers, nor does it permit a caregiver to cultivate or manufacture marijuana for another caregiver.
CONCLUSION
¶30 Based on the foregoing, we affirm the Order of the District Court.
JUSTICES MORRIS, RICE, NELSON and BAKER concur.

 The MMA was amended in 2009 and again in 2011. The 2009 version of the MMA is the subject of Plaintiffs’ appeal. Unless otherwise specified, all code references in this Opinion are to the 2009 Montana Code Annotated.

 This corporation is referred to as Medical Marijuana Growers Association, Inc., Montana Medical Growers Association, Inc., and Montana Marijuana Growers Association, Inc. throughout the record and briefing. We refer to it as Growers Association throughout this Opinion.

 Although this does not appear of record in the proceeding before us, the parties indicate in their briefs that Courier 1 and Courier 2 have pled guilty to the charges under a plea agreement and possibly reserved the right to appeal the legal issues as presented in this case.

 All of Title 50, chapter 46, part 3, MCA (2011), became effective on July 1,2011, with the exception of § 50-46-341, MCA (2011), which became effective on May 13,2011.