

DA 11-0435

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 162

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

SHAWN M. STONER,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 09-113
Honorable David Cybulski, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Colin M. Stephens,
Assistant Appellate Defender; Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Tammy A. Hinderman,
Assistant Attorney General; Helena, Montana

          Gina Dahl, Hill County Attorney; Havre, Montana


                Submitted on Briefs:  June 12, 2012

                            Decided:  July 31, 2012


Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Shawn Stoner appeals the order of the Twelfth Judicial District Court, Hill County, denying his motion to dismiss several marijuana charges against him. We affirm. The sole issue on appeal is whether the District Court erred in denying Stoner's motion to dismiss after he acquired a medical marijuana card.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On July 10, 2009, Tri-Agency Safe Trails Task Force Agent Pete Federspeil applied for and received a search warrant for Stoner's residence from Havre City Court. Task force agents and officers from the Havre Police Department executed the search warrant and found five marijuana plants and additional harvested marijuana in the residence. The agents and officers also located other marijuana paraphernalia, including growing equipment, pipes, a digital scale, and a marijuana crusher. The officers seized all of the evidence along with over $1,400 in cash that they believed to be the proceeds of marijuana sales.

¶3 Three days later, Agent Federspeil contacted the Montana Department of Public Health and Human Services (DPHHS) and was notified that Stoner had not obtained a medical marijuana registry identification card as a qualifying patient or caregiver.

¶4 On July 22, 2009, the State charged Stoner with Criminal Production or Manufacture of Dangerous Drugs, Use or Possession of Property Subject to Criminal Forfeiture, Criminal Possession of Dangerous Drugs with Intent to Distribute, and Criminal Possession of Drug Paraphernalia. Stoner pled not guilty to the charges. At his

2

omnibus hearing on September 11, 2009, Stoner did not raise a defense pursuant to the Medical Marijuana Act (MMA), nor did he indicate any intention to file a motion to dismiss the charges against him based on the MMA.

¶5 On September 30, 2009, DPHHS issued a qualifying patient registry identification card to Dustin Malley naming Stoner as his caregiver. On October 21, 2009, Stoner filed a motion to allow him to raise an affirmative defense under § 50-46-206, MCA (2007),[1] which was in effect at the time of his alleged offense. That statute allowed an affirmative defense to "any criminal offense involving marijuana," provided three criteria were satisfied. One requirement included proof that a physician had conducted "a full assessment of the person's medical history and current medical condition" and determined "the potential benefits of medical marijuana would likely outweigh the health risks for the person." In his motion, Stoner indicated he had scheduled an appointment with a physician who may, at the time of trial, testify in support of his affirmative defense. The State objected, arguing that Stoner had failed to assert the defense in a timely manner and, in any event, the defense was not applicable when a defendant obtained an MMA card after the offense for which he sought to use it. The court did not immediately rule on the matter.

¶6 On December 3, 2009, DPHHS issued a qualifying patient registry identification card to Stoner under the MMA. Stoner listed Malley as his caregiver. The cards issued to Malley and Stoner contained expiration dates approximately one year after their issue

---

[1] All references to the Montana Code Annotated are to the 2007 version, unless otherwise indicated.

3

dates. Both parties renewed their patient and caregiver cards shortly after the expiration dates.

¶7 On March 28, 2011, Stoner filed a motion to dismiss. Stoner's brief in support of his motion consisted almost entirely of portions of the MMA. Stoner cited § 50-46-201, MCA (stating the circumstances under which a person using marijuana "may not be arrested, prosecuted, or penalized in any manner") and § 50-46-206, MCA (describing when an affirmative defense may be asserted for an offense involving marijuana). The only legal argument Stoner provided was: "The case should be dismissed based upon Mr. Stoner's affirmative defense as a matter of law as there is no factual dispute regarding this issue." The State objected and repeated that Stoner did not obtain a registry card until after he was charged. The State further argued the affirmative defense was inapplicable because Stoner had not provided a physician's opinion justifying his use of the marijuana at the time of his offenses.

¶8 The District Court held a hearing on the motion to dismiss at which Stoner was the only witness to testify. He said he began seeing a doctor when he was twelve for scoliosis but stated, "I didn't see the medical marijuana doctor until I believe it was September of 2009." Stoner acknowledged that he was charged with the marijuana offenses in July 2009. In summation, Stoner asserted that the MMA did not require a person to possess a registration card at the same time he possessed marijuana. He also argued that even if the requirements of the law were hazy, the rule of lenity should apply and the statute should be construed in his favor. Though acknowledging the statute was

4

"pretty vague," the County Attorney argued that, because it was undisputed that Stoner did not possess a card at the time he was charged, the jury should decide whether the affirmative defense had been met. The District Court denied the motion to dismiss, stating it would not give Stoner "a get-out-of-jail free card." The court ruled the affirmative defense could go to the jury but Stoner's burden of proof would be "fairly high."

¶9 Stoner entered into a plea agreement with the State, reserving his right to appeal the ruling on his motion to dismiss. This appeal followed. As denial of Stoner's motion is the only issue raised on appeal, we do not address the District Court's ruling on the availability to Stoner of the affirmative defense provided in § 50-46-206, MCA.

## STANDARD OF REVIEW

¶10 "We review the denial of a motion to dismiss in a criminal case de novo." *State v. Updegraff*, 2011 MT 321, ¶ 24, 363 Mont. 123, 267 P.3d 28. A district court's statutory interpretation constitutes a conclusion of law, which this Court reviews for correctness. *State v. Shively*, 2009 MT 252, ¶ 13, 351 Mont. 513, 216 P.3d 732.

## DISCUSSION

¶11 Montana voters approved the MMA as a ballot initiative in November 2004. The portion of the 2007 MMA pertinent to this discussion is § 50-46-201, MCA, which states:

> **Medical use of marijuana—legal protections—limits on amount— presumption of medical use.** (1) A qualifying patient or caregiver who possesses a registry identification card issued pursuant to 50-46-103 may not be arrested, prosecuted, or penalized in any manner . . . if the qualifying patient or caregiver possesses marijuana not in excess of the amounts allowed in subsection (2).

5

(2) A qualifying patient and that qualifying patient's caregiver may not possess more than six marijuana plants and 1 ounce of usable marijuana each.

(3) (a) A qualifying patient or caregiver is presumed to be engaged in the medical use of marijuana if the qualifying patient or caregiver:

(i) is in possession of a registry identification card; and

(ii) is in possession of an amount of marijuana that does not exceed the amount permitted under subsection (2).

(b) The presumption may be rebutted by evidence that the possession of marijuana was not for the purpose of alleviating the symptoms or effects of a qualifying patient's debilitating medical condition.

The MMA defined "qualifying patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition." Section 50-46-102(7), MCA. "Debilitating medical condition" also was defined in the law. Section 50-46-102(2), MCA.

¶12 The 2011 Legislature repealed the former MMA and replaced it with the Montana Marijuana Act. Section 50-46-301(1), MCA (2011). The new Act makes clear that its provisions "relating to protection from arrest or prosecution do not apply to an individual unless the individual has obtained a registry identification card prior to an arrest or the filing of a criminal charge." Section 50-46-319(7), MCA (2011). Nonetheless, § 50-46-201, MCA, governs our decision as we apply "the law in effect at the time the crime was committed." *Med. Marijuana Growers Ass'n v. Corrigan*, 2012 MT 146, ¶ 20, ___ Mont. ___, ___ P.3d ____ (quoting *State v. Daniels* 2003 MT 30, ¶ 17, 314 Mont. 208, 64 P.3d 104).

¶13 On appeal, the State concedes that the amount of marijuana Stoner possessed did not exceed what was permitted under the MMA. Stoner acknowledges that the District

6

Court ruled in his favor by permitting him to assert an affirmative defense at trial, but contends he should have been afforded complete immunity from prosecution under § 50-46-201, MCA. Accordingly, we must determine whether the legal protections provided by that statute were available to a defendant who obtained a registry identification card after he was charged with the offenses.

¶14 Stoner argues that the plain language of § 50-46-201, MCA, is sufficient to answer this question in the affirmative. He notes the statute did not specifically state that immunity from prosecution applies only to acts committed after an individual obtains a registry identification card. He argues that this Court should not insert such a limitation. Stoner points to the new statute, which makes explicit that its legal protections do not apply unless a registry identification card is obtained before an arrest. He contends this modification is a clear indication that the prior version of the MMA lacked such qualification.

¶15 The State argues that inherent in the MMA is the requirement that marijuana be used medicinally and that the facts of this case, coupled with Stoner's failure timely to obtain a registry card, demonstrate he was not in compliance with the statute. The State asserts that the language of the new statute should not be utilized to interpret a now-repealed law, and suggests the former MMA cannot reasonably be construed as permitting defendants to avoid culpability by later acquiring a registry card.

¶16 Both parties cite to our decision in *State v. Nelson*, 2008 MT 359, 346 Mont. 366, 195 P.3d 826, in support of their arguments. In that case, we held that a district court could not impose a sentencing condition that would prohibit a defendant who was a "qualifying patient" from using marijuana in accordance with the MMA. *Nelson*, ¶ 33. Like Stoner, Nelson did not receive a registry card until after he was charged. *Nelson*, ¶ 9. Unlike Stoner, however, Nelson sought to utilize the legal protections of the MMA prospectively. *Nelson*, ¶ 14. We began our discussion with a review of the MMA:

> Under the MMA, it is legal for citizens to use medical marijuana in order to treat a variety of 'debilitating medical conditions,' *provided* they have received written certification from a physician that the potential benefits of medical marijuana use would outweigh the health risks, they are accepted in the Program by DPHHS, and otherwise comply with the requirements of the MMA.

*Nelson*, ¶ 7 (emphasis added). Based on the language of § 50-46-201(1), MCA, we held that a court could not prohibit a qualifying patient from using marijuana medicinally, but it could impose limitations on the place of use and could prohibit abuse of the drug. *Nelson*, ¶¶ 31, 33.

¶17 Since our decision in *Nelson*, we have declined invitations for expansive interpretation of the former MMA. *State v. Pirello*, 2012 MT 155, ¶ 21, ___ Mont. ___, ___P.3d___ ("[T]he MMA as it existed at the time provided a narrow exception to the general policy within the law that the possession of marijuana was illegal."); *Med. Marijuana Growers Ass'n*, ¶¶ 5, 25 (the MMA "allowed for the limited use of medical marijuana" which remains classified as a Schedule I controlled substance under § 50-32-

8

222(4)(t), MCA, and a dangerous drug under § 50-32-101(6), MCA, as well as under federal law, ¶ 35 (Nelson, J., concurring)).

¶18  The language of the former MMA expressly narrows the scope of its application as a limited exception to the criminal laws of Montana. For example, § 50-46-201, MCA, provides that an individual must acquire a registry identification card in order to be entitled to legal protection. To be eligible to receive a card, a person must be designated as a "qualifying patient" or a caregiver for a qualifying patient. Section 50-46-102(8), MCA. A qualifying patient must be diagnosed by a physician with a specific "debilitating medical condition" delineated in the MMA. Section 50-46-102(2), MCA. Proposed caregivers who had been convicted of a felony drug offense were prohibited from receiving a registry identification card. Section 50-46-103(4), MCA.

¶19  Stoner contends that he was entitled to the protections of the MMA because he possessed a registry identification card at the time of his motion to dismiss, even though it was months after he was charged. During the hearing before the District Court, he asserted that the registry identification cards acted retroactively so that individuals wishing to participate in the MMA could produce or obtain marijuana while undergoing the process to receive a card. Stoner's argument is undermined by the language of the MMA, which provided a specific process and deadlines to facilitate the prompt issuance of identification cards. Section 50-46-103(2), MCA, required DPHHS to "issue a registry identification card to a qualifying patient who submits" the listed requisite materials in accordance with department rules. Upon receipt of an application, DPHHS was to

9

approve or deny an application within fifteen days and to issue a card within five days of approval. Section 50-46-103(5)(a), (6), MCA. Thus, the MMA contemplated that a person meeting the listed requirements could expect to receive a medical marijuana registry identification card within three weeks of submitting an application. Also contrary to Stoner's position was the requirement, under § 50-46-103(6)(c), MCA, that the registry cards display their issuance and expiration dates. This mandate indicates that the cards were intended to be valid only for that period of time specified. The fact that Stoner renewed his registry identification card shows he implicitly recognized this notion. Stoner acknowledged that his cards were not issued until after he was charged.

¶20 Stoner's argument also is at odds with the language of the particular statute under which he seeks protection. As the State notes, § 50-46-201, MCA, prohibited criminal proceedings against a person who "possesses a registry identification card" and "possesses" a small amount of marijuana, indicating the attendant circumstances were required to be met simultaneously. Stoner disagrees, claiming that "qualifying patients"—not just those with registry cards—were entitled to avail themselves of the MMA protections. A common-sense reading of § 50-46-201, MCA, leads us to conclude that both subsection (1) pertaining to immunity, and subsection (3) discussing the presumption of medical use, applied only when a qualifying patient already had a registry identification card.

¶21 Stoner argues alternatively that the statute is ambiguous and the rule of lenity requires us to interpret the MMA in his favor. *State v. Liefert*, 2002 MT 48, ¶ 26, 309

Mont. 19, 43 P.3d 329. He relies on the prosecutor's concession during the hearing that the statute is "pretty vague." That statement alone does not trigger the rule of lenity, which "does not overcome unambiguous statutory readings." *Liefert*, ¶ 26. To be ambiguous, a statute must be "subject to more than one reasonable but conflicting interpretation." *State v. Norquay*, 2010 MT 85, ¶ 30, 356 Mont. 113, 233 P.3d 768 (Nelson, J., dissenting). *See also* Norman J. Singer, *Sutherland Statutes and Statutory Construction* vol. 2A, § 45:2, 11-12 (6th ed., West Group 2000) ("Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses."). Stoner's argument that he is entitled to complete immunity for past crimes once he obtains a registry identification card is an unreasonable interpretation of § 50-46-201, MCA. Stoner acknowledges the peculiarity of his argument, but maintains his interpretation should prevail "regardless of how strange or sweeping" it seems. On the contrary, when interpreting provisions of the MMA, we apply an interpretation that will ensure coordination with the Act's other provisions. *Pirello*, ¶ 16. As with any other statute, we view the MMA's provisions "as part of a whole statutory scheme, and construe them so as to forward the purpose of that scheme." *Ford v. Sentry Cas. Co.*, 2012 MT 156, ¶ 38, ___ Mont.___, ___P.3d___ (quoting *Tinker v. Mont. State Fund*, 2009 MT 218, ¶ 30, 351 Mont. 305, 211 P.3d 194). *See also State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448.

¶22 The purpose of the registry identification card under the MMA was to limit the possession and use of marijuana to qualified individuals for specific debilitating

11

conditions, not—as the District Court observed—to be acquired by a person as a "get-out-of-jail-free" card after getting busted. Stoner acknowledges in his brief that "it was not the intent of the MMA to allow unfettered use of marijuana to every stoner and reject from a Cheech and Chong casting call." Nor, however, was it the MMA's intent to allow this Stoner, or others like him, an avenue for legalization of their creative endeavors. Unfortunately, though clever, his argument cannot prevail. Perhaps Stoner's ingenuity will turn a legitimate profit in the future.

> They'll stone ya when you're tryin' to make a buck.
> They'll stone ya then they'll say, 'good luck.'

Bob Dylan, *Rainy Day Woman* (Columbia Recs. 1966) (CD).

¶23 Based on the language of § 50-46-201, MCA, within the context of the former MMA and the limited nature of its protections, we hold that Stoner was required to have obtained and be in possession of a valid registry identification card at the time of the offense for which he sought immunity from prosecution. Because Stoner did not obtain a registry identification card until after he was charged, he is not entitled to dismissal of the charges against him. The judgment of the District Court is affirmed.

/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JIM RICE

12