FILED

08/05/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0250

DA 24-0250

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 171

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

TANNER DAVID ALFORD,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 23-65
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Misty D. Gaubatz, A&M Law, Missoula, Montana

     For Appellee:

        Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

        William Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  April 2, 2025

Decided:  August 5, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Tanner David Alford (Alford) appeals his April 17, 2024 sentence imposed by the Twenty-First Judicial District Court, Ravalli County, after pleading guilty to Driving While Under the Influence of Alcohol and/or Drugs (DUI), 4th offense, a felony in violation of § 61-8-1002, MCA (2021).[1] Pursuant to a plea agreement, Alford was sentenced to the statutory minimum of a thirteen-month commitment to the Montana Department of Corrections (DOC) for placement in a treatment program, followed by a suspended commitment to the Montana State Prison (MSP). On appeal, Alford contends the mandatory minimum custodial sentences required by Montana's felony DUI statutes for multiple offenses are unconstitutional.

¶2 We restate the issue as follows:

*Did the District Court err by imposing the mandatory minimum custodial sentence for fourth-offense felony DUI because the sentencing statute is unconstitutional?*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On March 31, 2023, Ravalli County Sheriff's Deputy Nick Helmer observed Alford traveling 79 miles per hour in a 60-mile-per-hour zone and initiated a traffic stop. Deputy Helmer reported that Alford's "speech was slow and slurred, and that there was a strong

---

[1] Section 61-8-1008, MCA (2021), the statute providing punishment for fourth and subsequent violations of § 61-8-1002, MCA, became effective January 1, 2022. 2021 Mont. Laws ch. 498, § 4. We apply "the law in effect at the time the crime was committed," *State v. Stoner*, 2012 MT 162, ¶ 12, 365 Mont. 465, 285 P.3d 402, which in this case was March 31, 2023. Thus, statutory references herein are to the 2021 MCA.

2

smell of an alcoholic beverage emanating from the vehicle." Alford stated he did not have a driver's license and told Deputy Helmer he had consumed three beers at a local brewery and a couple more at home before leaving his residence, and that drinking was "helping" him to deal with "life issues." His breath alcohol content (BrAC) was 0.155, nearly twice the legal limit. Having three prior DUI convictions from Oregon, Alford was arrested for DUI (4th or subsequent offense) and later charged by Information with felony DUI and two misdemeanors: Speeding and Driving While License is Suspended or Revoked.

¶5 Following his arraignment, Alford was placed on alcohol monitoring and pre-trial supervision. Alford maintained his sobriety and complied with all conditions of his release during the pendency of his case. He voluntarily completed a chemical dependency evaluation, received mental health treatment, and attended Alcoholics Anonymous (AA) meetings. A mental health therapist diagnosed Alford with PTSD, major depressive disorder, and generalized anxiety disorder. Unfortunately, in November of 2023, while his case was pending, Alford sustained a traumatic head injury, causing headaches, fainting, dizziness, fatigue, memory loss, and seizures. Thereafter, Alford and his wife divorced, but they continued to co-parent their young daughter.

¶6 In January of 2024, Alford and the Ravalli County Attorney entered a plea agreement (Plea Agreement), which addressed only the felony DUI charge. The Plea Agreement recommended a sentence of a thirteen-month commitment to DOC, including completion of a DOC-approved treatment program—the Warm Springs Addiction, Treatment, and Change Program (WATCh)—and a suspended MSP commitment for a term of not more than five years. The recommended sentence was consistent with the

3

statutory mandatory minimum sentence, which provided that a person convicted of their fourth or subsequent DUI offense "is guilty of a felony and shall be punished by":

> (i) being sentenced to the department of corrections for a term of not less than 13 months or more than 2 years for placement in either an appropriate correctional facility or a program, followed by a consecutive term of 5 years to the Montana state prison or the Montana women's prison, all of which must be suspended, and a fine of not less than $5,000 or more than $10,000; or
> (ii) being sentenced to a term of up to 5 years in an appropriate treatment court program, with required completion, and a fine of not less than $5,000 or more than $10,000. If sentenced under this alternative, the person may be entitled to a suspended sentence but is not eligible for a deferred imposition of sentence.

Section 61-8-1008(1)(a), MCA. The Plea Agreement also provided that "Defendant waives Defendant's right to appeal or otherwise challenge this conviction by direct appeal, habeas corpus, or post-conviction relief." The Plea Agreement and an Amended Information were filed with the District Court on January 16, 2024,[2] and the District Court held a change of plea hearing on February 28, 2024, wherein Alford withdrew his not guilty pleas and pled no contest to fourth-offense DUI. Sentencing was set for April 17, 2024.

¶7 On March 20, 2024, between Alford's change of plea and sentencing, this Court decided *State v. Gibbons*, 2024 MT 63, 416 Mont. 1, 545 P.3d 686, in which the Court held that the statutorily mandated minimum fines for multiple-offense DUI convictions were facially unconstitutional because they did not permit sentencing courts to consider "'the nature of the crime committed, the financial resources of the offender, and the nature of the burden that payment of the fine will impose,'" in violation of a person's constitutional

---

[2] The Plea Agreement did not reference the pending misdemeanor charges, but they were dismissed by the District Court and were not included in the Amended Information.

right to be free from excessive fines. U.S. Const. amend. VIII; Mont. Const. art. II, § 22; *Gibbons*, ¶ 64 (citing *State v. Ber Lee Yang*, 2019 MT 266, ¶ 24, 397 Mont. 486, 452 P.3d 897 (quoting § 46-18-231(3), MCA)). On April 3, 2024, Alford's counsel emailed the prosecutor, advising that she would need to "argue for a sentence outside of the plea agreement" in light of the *Gibbons* decision. The prosecutor replied that, on the assumption "that has to do with fines," he "ha[d] no issue with that deviation."[3] Discussing *Gibbons*, Alford filed a sentencing memorandum with the District Court in which he requested a "5-year suspended sentence," arguing that requiring him to spend "at least 13 months in custody or in the WATCh program is so excessive and disproportionate to the unique circumstances of this case that such a punishment would be cruel and unusual." Neither party made corrections to the pre-sentence investigation report (PSI).

¶8 At the sentencing hearing, Alford's counsel urged the District Court to consider Alford's personal and financial situation before imposing a custodial sentence, arguing, "we are . . . talking about the human costs that would be imposed upon Mr. Alford should any significant in-custody time be a part of his sentence. . . . I believe that the same logic that the Court used in *Gibbons* to declare that the mandatory minimum fines [are] unconstitutional . . . can be applied to the mandatory minimum in-custody time." The

---

[3] This email exchange, documented in an exhibit to Alford's reply brief, was the subject of a motion to strike by the State, as the exchange was not made a part of the District Court record. The prosecutor's email response was consistent with the Plea Agreement, which stated that "[t]he State will leave the amount of any fine imposed to the Court's discretion." However, Alford's sentencing argument deviation was not about the fine, but about the custodial portion of the sentence. Nonetheless, in light of further proceedings that occurred before the District Court, addressed herein, we deny the motion to strike.

District Court responded: "[w]ell, the recent [Montana] Supreme Court decision basically said that mandatory fines are unconstitutional in these matters; that the Court needs to inquire concerning ability to pay, but it did not find that the sentence was unconstitutional." Accordingly, the District Court sentenced Alford pursuant to § 61-8-1008(1)(a), MCA, as recommended by the Plea Agreement. The District Court noted that, in accordance with statute, "if the Defendant successfully completes a residential alcohol treatment program approved by the [DOC], the remainder of the 13 months must be served on probation." The District Court also imposed a fine of $1,000, with $900 suspended.[4] After Alford's counsel advised the District Court of her intention to appeal based on *Gibbons*, the District Court suspended the imposition of Alford's sentence pending this appeal.

## STANDARD OF REVIEW

¶9 This Court reviews criminal sentences for legality, "confining our review to whether the sentence falls within the parameters set by statute." *State v. Kalina*, 2025 MT 70, ¶ 53, 421 Mont. 305, 567 P.3d 270 (citing *State v. English*, 2006 MT 177, ¶ 55, 333 Mont. 23, 140 P.3d 454). A claim that a sentence violates the constitution is a matter of law that we review *de novo*. *State v. Garrymore*, 2006 MT 245, ¶ 9, 334 Mont. 1, 145 P.3d 946.

## DISCUSSION

¶10 *Did the District Court err by imposing the mandatory minimum custodial sentence for fourth-offense felony DUI because the sentencing statute is unconstitutional?*

¶11 Preliminarily, the parties skirmish regarding the procedural posture of the appeal. The State argues that Alford waived his right to challenge his sentence on appeal by the

---

[4] Alford does not contest the fine on appeal.

6

terms of the Plea Agreement, which provided that Alford waived his "right to appeal or otherwise challenge this conviction by direct appeal, habeas corpus, or post-conviction relief." Defendants are generally bound by the terms of a plea agreement, particularly when obtaining the benefit of a bargain. *See State v. Brady*, 2025 MT 105, ¶ 33, 422 Mont. 23, 569 P.3d 195 (quoting *State v. Keys*, 1999 MT 10, ¶ 19, 293 Mont. 81, 973 P.2d 812 (courts "will not assist a defendant in escaping the obligations of his plea agreement after he has received its benefits")). Here, following the *Gibbons* decision, which was issued after Alford's change of plea hearing and before the sentencing hearing, there was communication between the parties about Alford requesting a sentence that would deviate from the sentence recommended by the Plea Agreement. On his expressed assumption that this deviation "ha[d] to do with fines," the prosecutor agreed. On April 3, 2024, the same day as the parties' email exchange, Alford's counsel filed a sentencing memorandum asking for a suspended sentence, which was not related to fines and deviated from the custodial sentence recommended by the Plea Agreement. However, during the sentencing hearing on April 17, 2024, while the State opposed Alford's new sentencing recommendation, it did not argue that Alford was barred from making the recommendation on the basis that it deviated from the Plea Agreement. Then, upon Alford's expressed intention to appeal from the denial of his sentencing argument, the District Court suspended the imposition of the sentence pending appeal. Under these circumstances, we conclude that Alford's right to challenge his sentence upon appeal was sufficiently preserved.

¶12 However, the State also argues that Alford failed to sufficiently raise an as-applied constitutional challenge in the District Court to preserve that issue for appeal, and that, in

his appellate briefing, Alford has argued only in support of a facial constitutional challenge to the DUI statute. Alford replies that he "preserved both facial and as-applied constitutional challenges to his sentence" in the District Court. The significance of this question is that "[a] defendant's as-applied constitutional challenge is based on the defendant's allegation that [his] *sentence* is unconstitutional, although imposed pursuant to a constitutional sentencing statute," *Yang*, ¶ 11 (emphasis in original), and we will not review an as-applied constitutional challenge raised for the first time on appeal. *State v. Coleman*, 2018 MT 290, ¶ 8, 393 Mont. 375, 431 P.3d 26. A facial challenge, on the other hand, "is based on the defendant's allegation that the *statute* upon which his sentence was based is unconstitutional—i.e., his sentence is illegal. Therefore, we address facial constitutional challenges to sentencing statutes even if they are raised for the first time on appeal." *Coleman*, ¶ 9 (emphasis in original).

¶13 Alford's arguments before the District Court were generalized and not well supported. Giving him the benefit of any doubt, his arguments there could be read to overlap between the two types of challenges. However, his argument on appeal to this Court is premised entirely on a facial challenge to the statute. Alford's opening brief states:

> The mandatory sentencing requirements for felony DUIs prevent sentencing judges *in every single case* from considering a host of important sentencing considerations. . . . In short, these mandatory minimum sentencing requirements impermissibly remove judicial discretion in sentencing for *all felony DUI cases*.
>
> .   .   .
>
> Statutory mandatory minimum fines are *facially unconstitutional* because such mandates do not allow sentencing judges to consider proportionality

8

> factors, such as the nature of the financial burden and the defendant's ability to pay.
>
> .   .   .
>
> A litigant challenging the *facial constitutionality* of a statute must establish that either no set of circumstances exists under which the statute would be valid, meaning that it is unconstitutional in all its applications, or the statute lacks a plainly legitimate sweep. . . . The mandatory minimum in-custody time in Mont. Code Ann. § 61-8-1008 is *unconstitutional in all applications* because it prohibits a sentencing court from considering its proportionality to a defendant's particular DUI offense, including but not limited to the defendant's ability to pay the financial and human costs associated with the in-custody time.

Alford clearly challenges the facial constitutionality of § 61-8-1008, MCA, as violative of the Cruel and Unusual Punishment Clause of the Montana Constitution. He clearly does not make an "as-applied constitutional challenge [ ] based upon the defendant's allegation that [his] *sentence* is unconstitutional, although imposed pursuant to a constitutional sentencing statute," even in the alternative. *Yang*, ¶ 11 (emphasis in original). Consequently, we conclude Alford has raised a facial constitutional challenge.

¶14 To prevail on a facial challenge, the party bringing the challenge must show that "no set of circumstances exists under which the statute would be valid or that the statute lacks any plainly legitimate sweep." *State v. Sedler*, 2020 MT 248, ¶ 17, 401 Mont. 437, 473 P.3d 406 (internal quotation omitted) (citing *In re S.M.*, 2017 MT 244, ¶ 10, 389 Mont. 28, 403 P.3d 324); *Mont. Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 14, 382 Mont. 256, 368 P.3d 1131. A "facial challenge to a legislative act is of course the most difficult challenge to mount successfully, since the challenger must establish that no circumstances exist under which the act would be valid." *Mont. Cannabis Indus. Ass'n*, ¶ 14 (citing *In re*

*Marriage of K.E.V.*, 267 Mont. 323, 336, 883 P.2d 1246, 1255 (1994) (Trieweiler, J., concurring and dissenting)).

¶15    Article II, Section 22, of the Montana Constitution and the Eighth Amendment of the U.S. Constitution, incorporated to the states through the Fourteenth Amendment, are nearly identical and contain three distinct clauses prohibiting excessive bail, excessive fines, and cruel and unusual punishment. The "touchstone" of the Eighth Amendment and Article II, Section 22, is proportionality. *Yang*, ¶ 16 (citing *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 2036 (1998)). "In assessing proportionality, courts must consider that judgments about appropriate punishment for an offense belong in the first instance to the legislature." *Yang*, ¶ 16 (citing *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009 (1983)). We are also to presume legislative enactments are constitutional. *Powell v. State Comp. Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877. The policy of this state is to afford broad discretion to sentencing courts in determining appropriate sentences. *See* § 46-18-101(3)(d), MCA (laws punishing crime must "permit judicial discretion to consider aggravating and mitigating circumstances"). "The general rule regarding sentencing is that a sentence within the maximum statutory guidelines does not violate the Eighth Amendment prohibition against cruel and unusual punishment." *State v. Webb*, 2005 MT 5, ¶ 34, 325 Mont. 317, 106 P.3d 521 (citing *State v. Dahms*, 252 Mont. 1, 13, 825 P.2d 1214, 1221 (1992)). The exception to this general rule is when "'a sentence is so disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice.'" *State v. Wardell*, 2005 MT

252, ¶ 28, 329 Mont. 9, 122 P.3d 443 (quoting *State v. Tadewaldt*, 277 Mont. 261, 271, 922 P.2d 463, 469 (1996)).

¶16    Alford argues that "[t]he mandatory minimum in-custody statute is just as offensive to Montana's constitutional proportionality requirement as is the mandatory minimum fine statute that was found to be unconstitutional in *Gibbons*." In *Gibbons*, the Court concluded that the Legislature's enactment of mandatory minimum fines for certain multiple-offense DUI offenses were facially unconstitutional because they did not allow sentencing courts to consider the proportionality of the "fine's excessiveness in relation to the offender and his ability to pay," in violation of Article II, Section 22, of the Montana Constitution, and the Eighth Amendment. *Gibbons*, ¶ 49. Alford argues the same logic extends to mandatory minimum custodial sentences for DUI offenders because, when the "financial and human costs" of serving custodial sentences are taken into account, a required minimum custodial sentence is disproportionate to the crime and constitutes cruel and unusual punishment. He states that § 61-8-1008, MCA, unconstitutionally precludes judges from exercising discretion in determining how a custodial sentence may affect each individual offender. However, for the following reasons, we do not agree that *Gibbons* necessitates invalidation of the mandatory minimum custodial sentence for fourth or subsequent DUIs that was imposed upon Alford.

¶17    The mandatory minimum custodial sentence of thirteen months required by § 61-8-1008(1)(a)(i), MCA, for fourth and subsequent DUIs is rationally related to the sentencing objectives the Legislature has sought to achieve for felony DUI enforcement and prevention, and is appropriately commensurate with the gravity of the offense. The

11

Legislature has designated first through third DUI offenses as misdemeanors. Section 61-8-1007, MCA. The original aggravated DUI statute for fourth and subsequent offenses enacted in 1995 carried a mandatory prison term ranging from one to ten years. 1995 Mont. Laws ch. 447, § 8(4) (enacting § 61-7-714(4), MCA). That statute was amended in 1997, reducing the mandatory imprisonment range to a period of six months to not more than thirteen months. 1997 Mont. Laws ch. 512, § 1(4). The sponsor of the legislation explained:

> Many of us have had a philosophy change since last session. The primary purpose of the criminal justice system is to punish the offender, that punishment should be consistent, swift and fit the crime. The system will not rehabilitate anyone, we provide the tools for the offenders to help rehabilitate themselves. . . . [This bill] provides truth in sentencing, increases the mandatory minimum term to 6 months without parole and decreases the maximum term from 1-10 years to 6-13 months.

*Sen. Fin. and Claims Comm. Hr'g Minutes re HB 100* (Mar. 18, 1997). In 2001, the statute was again amended to establish a residential treatment program. The enacting legislation required felony DUI offenders be committed to DOC custody "for placement in an appropriate correctional facility or program for a term of 13 months," with any remaining time on the thirteen-month period after successful completion of an alcohol treatment program to be served on probation. 2001 Mont. Laws ch. 417, § 2. Because mandatory imprisonment for felony DUI offenders had grown prison populations between 1997 and 2001, resulting in large costs to the State, the Legislature stated in the preamble of Senate Bill 489 that "the incidence of fourth or subsequent convictions for driving under the influence . . . ha[d] not abated despite the threat of imprisonment," 2001 Mont. Laws ch. 417, pmbl, and offered legislative testimony that a mandatory custodial sentence and

12

completion of a treatment program would best achieve the State's interests in punishing repeat offenders and promoting public health and safety. *Sen. Comm. on Judiciary Hr'g Minutes re SB 489* (Feb. 19, 2001). The residential treatment program was estimated to last six months. *Sen. Comm. on Judiciary Hr'g Minutes re SB 489* (Feb. 19, 2001). Thereafter, the penalty language for fourth and subsequent DUIs remained largely the same, undergoing minor changes in 2005, 2011, and 2015. The language was re-codified in 2021 as § 61-8-1008(1), MCA, without any substantial changes. 2021 Mont. Laws ch. 473.[5]

¶18    An analysis of the history of the Legislature's efforts regarding the felony DUI statutes illustrates the Legislature has weighed proposed penalties in accordance with the gravity of the offense and taken into consideration the outcomes from previous legislative actions before undertaking further statutory amendments. Perhaps most telling is the Legislature's willingness to re-evaluate its priorities and make consequential changes, moving to a system emphasizing mandatory treatment after mandatory imprisonment proved ineffective in reducing repeat DUI offenses. As noted above, the Legislature has continued to acknowledge that repeat DUI offenders must be punished in accordance with

---

[5] In 2005, the Legislature increased the penalty for a felony DUI offender who re-offended after being sentenced to a residential alcohol treatment program to DOC commitment "for a term of not less than 13 months or more than 5 years." 2005 Mont. Laws ch. 54, § 1(3). The 2011 Legislature created the crime of misdemeanor aggravated DUI. 2011 Mont. Laws ch. 282. With HB 111, in 2015, the Legislature amended the fourth or subsequent DUI penalty to include DOC commitment "for a term of not less than 13 months or more than 2 years." 2015 Mont. Laws ch. 197, § 1(a). Bill sponsor Keith Regier stated: "an option for a judge to increase the sentence will be a motivation for offenders to get treatment and also provide an option for the judge to require more supervision of the hardcore offenders." *House Comm. on Judiciary Hr'g re HB 111*, *Recorded Video Transcript at* 10:27:42–10:27:56 (Jan. 15, 2015).

their crime, § 46-18-101(2), MCA, and that they continue to present a significant danger, which is no secret. *See* Nat'l Highway Traffic Safety Admin., *Traffic Safety Facts* (June 2023) *available at* https://perma.cc/2QBA-QJ7B (listing Montana as leading the nation in percentage of drunk driving fatalities);[6] Kelly Anne Smith, *Worst States for Drunk Driving In 2025*, Forbes (Jan. 3. 2025) *available at* https://perma.cc/T6WV-PQZH (ranking Montana as the "worst state for drunk driving" with a score of 100/100). To combat this, the felony DUI statutes provide a temporal sentencing range for commitment to DOC custody and allow judges discretion to impose a sentence proportionate to the treatment deemed necessary for the most "hardcore offenders." *See House Comm. on Judiciary Hr'g re HB 111*, *Recorded Video Transcript at* 10:27:42–10:27:56 (Jan. 15, 2015). The statutory scheme also contains graduated driver license suspension, monitoring, and treatment options that, combined, can result in an offender spending less time committed to DOC's custody than a judge may be otherwise inclined to impose without similar safeguards. Section 61-8-1008(5)-(6), MCA.

¶19 In sum, the statutory minimum custodial sentence of thirteen months for multiple-offense DUI convictions is not so grossly disproportionate to the real risks posed by impaired drivers as to shock the conscience and render it cruel and unusual punishment.

¶20 Further, the challenge to Montana's DUI statutes brought by Alford cannot be analogized to the *Gibbons* holding because the two cases focus on different clauses within the Constitution, each entitled to separate analysis. *Gibbons* focused, relevant here, on the

---

[6] Montana law now defines DUI as driving under the influence of alcohol, "any drug, or any combination of alcohol and any drug." Section 61-8-1008(1)(a), MCA.

constitutionality, that is, the proportionality, of requiring those convicted of multiple felony DUI offenses to pay a mandatory minimum fine and whether that fine violated the Excessive Fine Clause. *See Gibbons*, ¶ 63 ("we have been presented with the question of whether a mandatory fine violates constitutional proportionality requirements embedded in the prohibition *against excessive fines*") (emphasis added). Accordingly, the Court determined that "analysis of proportionality extends not only to the fine's *excessiveness* in relation to the offense, but also the fine's *excessiveness* in relation to the offender and his ability to pay." *Gibbons*, ¶ 49 (emphasis added). Nowhere in *Gibbons* did we address the Cruel and Unusual Punishment Clause or mandatory minimum custodial sentences.

¶21 Further, the U.S. Supreme Court has rejected the argument that proportionality factors should be applied to mandatory custodial sentences. *See Harmelin v. Mich.*, 501 U.S. 957, 985, 994, 111 S. Ct. 2680, 2696, 2701 (1991) (stating, "[w]hile there are relatively clear historical guidelines and accepted practices that enable judges to determine which *modes* of punishment are 'cruel and unusual,' *proportionality* does not lend itself to such analysis" and holding a life sentence for a first-time felony drug offense did not violate the defendant's Eighth Amendment rights) (emphasis in original). "There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Harmelin*, 501 U.S. at 995, 111 S. Ct. at 2701.

¶22 Alford has not shown that Montana's felony DUI statutes requiring minimum custodial sentences for multiple offenses are invalid under all circumstances or that the statute lacks a plainly legitimate sweep, and thus, his facial constitutional challenge fails.

We conclude the District Court did not err when it sentenced Alford to the statutory minimum custodial sentence of thirteen months for his fourth DUI.

¶23     Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA