
DA 06-0471

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 289

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JACK GRIFFIN,

Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DC-98-26,
Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jack Griffin, pro se, Billings, Montana

For Appellee:

Honorable Mike McGrath, Attorney General, Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

Robert M. McCarthy, County Attorney, Butte, Montana

Submitted on Briefs:  October 10, 2007

Decided:  November 6, 2007

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Jack Griffin pled guilty to a charge of felony incest, and was sentenced to thirty years in the Montana State Prison, with fifteen years suspended. Griffin signed a Request to Amend Conditions of Probation Supervision, consenting that his probation could be modified to include participation in the Intensive Supervision Program (ISP). The District Court approved his request and entered an Order Modifying the Conditions of Supervision. He subsequently filed a motion to set aside the District Court's order, which was denied. He now appeals the District Court's denial of that motion. We affirm.

¶2 We restate the issue as follows:

¶3 Did the District Court err in denying Griffin's motion to set aside the order modifying the conditions of his probation?

## BACKGROUND

¶4 Defendant Jack Griffin pled guilty to a charge of felony incest for having sexual intercourse with his minor daughter and was convicted on June 26, 1998. The District Court classified Griffin as a Level III sex offender and sentenced him to Montana State Prison for a period of thirty years, with fifteen years suspended. One of the conditions of his sentence stated that "[t]he Defendant shall be under the supervision and control of the Montana Office of Adult Probation and Parole during the entire period of the suspended sentence including at least monthly personal reports to his parole/probation officer. The Defendant *shall abide by all the rules and conditions of that office*" (emphasis added). This same condition appeared in the pretrial agreement which Griffin himself signed.

2

¶5     After serving seven and a half years of his sentence, Griffin was released from the custody of Montana State Prison and was placed under the supervision of the Department of Corrections ("the Department"). He wanted to be placed in Billings, though he had no existing ties to the community there. Griffin met with Laura McKee, a probation officer of the Department of Corrections Adult Probation and Parole Bureau in Billings. McKee recommended that Griffin complete ISP when he was released from prison "to assist him in reentering the community." McKee recommended that Griffin's conditions of probation supervision be modified to include ISP because he was a Level III sex offender who had "no ties to [the] community and no job or treatment set up." She found that "[h]e warrants a higher level of supervision than standard probation provides."

¶6     Griffin signed a formal request to modify the conditions of his probation to include ISP. The Deputy County Attorney then moved the court to modify the conditions of Griffin's probation as requested, pursuant to § 46-23-1011(4), MCA (2005). Several days later, the District Court approved the motion and entered an order modifying the conditions of Griffin's supervision. The District Court's order specifically noted that Griffin agreed to the conditions in writing.

¶7     A day after the District Court's order was issued, Griffin moved to have the order set aside. His attorney withdrew this motion the following day, upon learning that Griffin had consented to the modification. Later, he spoke with Griffin, and Griffin claimed that his probation officer had coerced him to sign the request for modification. Griffin's attorney then renewed the motion to set aside the District Court's order modifying the conditions of Griffin's probation.

3

¶8 The District Court denied the renewed motion to set aside, finding that Griffin had consented to the request to modify the conditions. The District Court also found that there was "no evidence from the Defendant that his agreement to the Request for Modification was coerced or the result of duress." Rather, the District Court found, Griffin himself "indicate[d] that he signed such document so he could be supervised in Billings, Montana."

¶9 The court concluded that it had the authority to modify the conditions of Griffin's probation pursuant to § 46-23-1011(4), MCA, which provides "a judge may modify or add any condition of probation or suspension of sentence at any time." Finally, the District Court concluded, the requirement to complete ISP did not change Griffin's original conditions of probation, but merely subjected him to greater scrutiny. This appeal ensued.

## STANDARD OF REVIEW

¶10 A district court's decision to grant or deny a post-trial motion is discretionary. *State v. Sheehan*, 2005 MT 305, ¶ 18, 329 Mont. 417, ¶ 18, 124 P.3d 1119, ¶ 18. We review such rulings in criminal cases for abuse of discretion. *Sheehan*, ¶ 18. The burden of demonstrating abuse of discretion is on the party seeking reversal of the district court's ruling. *Sheehan*, ¶ 18.

## DISCUSSION

¶11 **Did the District Court err in denying Griffin's motion to set aside the order modifying the conditions of his probation?**

4

¶12 Griffin argues that the District Court's order constituted a modification of his sentence, and as such, violated his constitutional rights. Specifically, Griffin claims that the District Court lacked the authority to modify his sentence eight years after it was issued, and that the ISP requirement violates *ex post facto* principles because it increased his punishment.

¶13 In response, the State argues the District Court's order simply changed the conditions of Griffin's supervision on probation. The State maintains the court had the authority to modify the conditions of Griffin's probation pursuant to § 46-23-1011(4), MCA. Because the court's order did not change the length, term, or substance of Griffin's sentence, the State claims that the modification does not implicate constitutional concerns. We agree.

¶14 A. Did the District Court have authority to modify the conditions of Griffin's probation pursuant to § 46-23-1011(4), MCA?

¶15 Section 46-23-1011(4), MCA, gives judges the authority to "modify or add any condition of probation or suspension of sentence at any time." At the time Griffin was sentenced, § 46-23-1011(4), MCA (1998), only permitted judges to modify conditions of probation. In 2001, the statute was amended to permit judges to "modify or add" to the conditions of probation. Section 46-23-1011(4), MCA, cmnt (2001). The Legislature specifically intended that the section be applied retroactively to offenders currently in the Department's custody. Section 46-23-1011(4), MCA, cmnt (2001). Even if the provision had not been made retroactive, under the terms of § 46-23-1011(4), MCA (1998), at the

5

time Griffin was sentenced, the District Court still had the authority to modify the conditions of Griffin's suspended sentence.

¶16 B. Did the District Court's order constitute a modification of Griffin's punishment, in violation of the *ex post facto*, double jeopardy, and due process clauses of the Montana Constitution?

¶17 Not every modification of the conditions of a suspended sentence will implicate *ex post facto* concerns. The touchstone of the *ex post facto* analysis in this context is whether an offender's sentence has been changed in a punitive sense. *State v. Mount*, 2003 MT 275, ¶ 89, 317 Mont. 481, ¶ 89, 78 P.3d 829, ¶ 89 (adopting the intents-effects test to determine whether laws are punitive or non-punitive). The modification of an offender's conditions of probation must be distinguished from a modification of an offender's sentence itself.

¶18 It is conceivable that some applications of § 46-23-1011(4), MCA, may violate *ex post facto* principles. If, for example, a district court added months or years to a defendant's sentence under the color of § 46-23-1011(4), MCA, that would clearly violate the constitutional prohibition against *ex post facto* laws. Mont. Const. art. II, § 31.

¶19 Although the District Court's order modified the condition of Griffin's supervision pursuant to § 46-23-1011(4), MCA, it did not modify his punishment. We conclude that the District Court's order simply clarified the conditions of Griffin's probation, and did not change his original sentence. As discussed in more detail below, Griffin's participation in ISP was contemplated by the original conditions of his suspended

sentence. Further, the ISP program is not punitive in nature, and reinforces (rather than changes) the original conditions of Griffin's suspended sentence. Because Griffin's sentence itself has not been modified, it is unnecessary for us to reach his *ex post facto*, double jeopardy, and due process claims.

¶20    *1. Was ISP contemplated as one of the original conditions of Griffin's suspended sentence?*

¶21    As one of the conditions of his suspended sentence, the District Court ordered Griffin to "abide by all the rules and conditions of [the Department of Corrections]." Section 46-23-1002(3), MCA (1998), provides that the Department may "adopt rules for the conduct of persons placed on parole or probation, except that the department may not make any rule conflicting with conditions of parole imposed by the board or conditions of probation imposed by a court." As we recognized in *Therriault*, ISP is a permissible exercise of the Department's authority under § 46-23-1002(3), MCA, so long as none of the ISP rules conflict with the offender's court-ordered conditions of probation. *State v. Therriault*, 2000 MT 286, ¶¶ 46-47, 302 Mont. 189, ¶¶ 46-47, 14 P.3d 444, ¶¶ 46-47.

¶22    At the time of Griffin's sentencing, ISP was used by the Department as one of the rehabilitation programs for high-risk offenders like Griffin. While the District Court did not specifically require Griffin to complete ISP in its original conditions, it required him to abide by all the rules and conditions of the Department's probation program. One of the conditions that the Department attached to Griffin's probation in Billings was the requirement to complete ISP. Thus, we agree with the District Court's finding that ISP was contemplated as one of the original conditions of Griffin's suspended sentence.

7

¶23    *2. Does the requirement to successfully complete ISP change Griffin's original sentence?*

¶24    The District Court's order modifies the conditions of Griffin's probation by intensifying his level of supervision.  However, the requirement to complete ISP is not punitive and does not change the terms of Griffin's original sentence.

¶25    The Department first developed ISP in Billings in 1987.  Since then, it has been available as an alternative to imprisonment for felony offenders requiring a higher level of supervision.  The program is open to offenders on inmate status, as well as to those on parole or probation status.  The stated purpose of the ISP is to provide "offenders who need a structured environment, counseling, and supervision" with "a specialized form of adult probation . . . using a heightened level of supervision, monitoring devices and close scheduling."  *Therriault*, ¶¶ 41-42. ISP is a "community-based" program which allows offenders to "live at home [and] hold or seek jobs."  *Therriault*, ¶¶ 41-42.

¶26    In *Therriault*, we explicitly rejected the notion that ISP was punitive in nature, and held that participation in the program could not change an offender's status from probationer to inmate.  *Therriault*, ¶¶ 38-47.  We specifically held that the rules and regulations of ISP may not conflict with the terms of a district court's sentence. *Therriault*, ¶¶ 46-47.  Rather, ISP is merely a "specialized form of adult probation and parole supervision" which places the offender under greater scrutiny, but still requires him to abide by all the original conditions of his probation. *Therriault*, ¶¶ 41, 47.

¶27    Thus, the Department's recommendation that Griffin complete ISP does not change the terms of his original sentence.  To the contrary, the District Court included a

number of restrictive conditions on Griffin's suspended sentence. The District Court prohibited Griffin from contact with children under the age of eighteen; from using or possessing pornographic material, alcoholic beverages or drugs; from entering any establishments where alcohol is the primary item of sale; and from using or possessing any firearms. Further, the court ordered Griffin to seek and maintain full-time employment; to submit to random drug testing; to enroll in a chemical dependency treatment program; and to successfully complete a sex offender treatment program under the supervision of the Department. ISP will provide Griffin with the resources and tools he needs to comply with these original conditions of his suspended sentence.

¶28 We agree with the District Court's conclusion that the ISP requirement simply requires Griffin to "abide by the original conditions of probation . . . subject to greater scrutiny." ISP was contemplated as one of the original conditions of Griffin's suspended sentence, and the requirements of ISP do not change the conditions of the District Court's sentence. Because the District Court's order does not modify Griffin's punishment, he has not suffered any due process, double jeopardy, or *ex post facto* violations. As a result, it is unnecessary to reach the other issues he raises on appeal.

¶29 Finally, we must address Griffin's claim that he was coerced into signing the request to modify the conditions of his probation. Griffin has failed to produce any evidence to support his claim that he signed the request under duress. Thus, we cannot conclude that the District Court abused its discretion in denying his motion.

**CONCLUSION**

¶30    In conclusion, we hold that the District Court did not abuse its discretion in denying Griffin's motion to set aside the order modifying the conditions of his probation. The District Court had the authority to modify the conditions of Griffin's probation pursuant to § 46-23-1011(4), MCA.   The original conditions of Griffin's suspended sentence contemplated the possibility of his participation in ISP.   Griffin's participation in the ISP program ensures his compliance with each of the conditions imposed by the District Court in his sentence.   The court's order does not modify the substance of Griffin's punishment, and as a result, does not implicate *ex post facto*, double jeopardy, or due process concerns.   On appeal, Griffin bears the burden of proof in demonstrating that the District Court has abused its discretion.   Here, he has failed to meet that burden of proof.   Thus, we affirm the District Court's order denying Griffin's motion to set aside the order modifying the conditions of his probation.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS