FILED

December 30 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 12-0742

DA 12-0742

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 342

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

JAMES PILLER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 88-145
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender, Kristen L. Larson (argued),
Assistant Appellate Defender; Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman (argued),
Assistant Attorney General; Helena, Montana

            Scott Twito, Yellowstone County Attorney; Ingrid Rosenquist, Deputy

County    Attorney; Billings, Montana

Argued: June 25, 2014
Submitted: July 2, 2014
Decided: December 30, 2014

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 James Piller appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, which upon revoking Piller's suspended sentence for his 1988 conviction for sexual intercourse without consent, resentenced Piller to ten years at Montana State Prison (MSP) with five years suspended, and imposed 14 new conditions on his suspended sentence. We affirm.

¶2 The sole issue on appeal is whether the District Court's imposition of 14 new conditions on Piller's suspended sentence violates ex post facto principles.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In 1988, James Piller was charged by information for sodomizing a three-year-old girl whom he was babysitting. Piller pled guilty to sexual intercourse without consent, a felony. The District Court sentenced Piller to 30 years at MSP with ten years suspended.

¶4 Piller escaped from MSP on June 11, 1992, and was apprehended the same day. He was charged with escape, intimidation, and possession of a weapon by a prisoner. The Third Judicial District Court, Powell County, sentenced Piller to ten years for each count, to run concurrent with each other.

¶5 Piller did not complete sex offender treatment while incarcerated at MSP. In April and June of 2007, probation officer John Boyd made several requests to the District Court to amend Piller's conditions of probation because he considered Piller an "untreated sex offender." On April 21, 2007, Piller was discharged to serve the suspended portion of his

---

[1] Piller also raised the issue that his written revocation order did not give him credit for 486 days served. The State conceded this issue in their brief; therefore, we do not address this argument in

2

sentence. The conditions for his suspended sentence were based on the original 1988 sentencing as follows:

1. The defendant shall not frequent any place where intoxicating liquor or beer is the chief item of sale nor shall he use intoxicants or beer; nor shall he purchase, use, possess, give, sell or administer any narcotic or dangerous drugs or have in his possession same without proper prescription by a doctor.

2. The defendant shall not enter into any game of chance nor shall defendant frequent any place where gambling may be taking place.

3. The defendant shall conduct himself in a law abiding manner and shall not violate any law of the United States or of the State of Montana or any other State, or the ordinance of any city or town of this State or other State during the said term.

4. The defendant shall maintain as steady employment as possible [during] said term, and he shall to the best of his ability fully and completely contribute to the support of his family.

5. The defendant is placed under the supervision and control of the Adult Probation and Parole Field Services and is to abide by their rules and regulations.

6. The defendant shall enroll in and successfully complete the sex offenders program at the Montana State Prison prior to parole.

¶6      The first report of violation of probation conditions was filed against Piller on January 18, 2011, for failing to give his probation officer a current address, calling his probation officer a "bitch," using threatening language in a meeting, and for living with another convicted felon. Piller's probation officer recommended that Piller's sentence be revoked, that he be resentenced to the Department of Corrections for six years with three years suspended, and that Piller have 14 additional conditions added to his suspended sentence. At

this opinion.

3

a hearing on June 29, 2011, the District Court orally found that Piller had substantially violated the conditions of his parole.

¶7 Piller later filed a disposition memorandum objecting to the probation officer's recommendation that new conditions be placed on his suspended sentence. On November 10, 2011, the District Court filed an order imposing a new sentence of ten years with all time suspended, and imposing the 14 new conditions to Piller's suspended sentence, as recommended by the probation officer.

¶8 Piller appealed the November 10, 2011 order to this Court. However, the parties stipulated that Piller's matter was not ripe for appeal because Piller's sentence had not been orally pronounced from the bench in Piller's presence. In an order dated May 31, 2012, we remanded Piller's case back to the District Court for oral pronouncement of the sentence and a written judgment including credit for time served, as well as a specific provision considering and granting or denying credit for Piller's street time.

¶9 On March 22, 2012, Piller was again cited for parole violations, including a privacy in communications charge. The State petitioned to revoke Piller's suspended sentence, and the District Court held a revocation hearing on August 13, 2012. On September 6, 2012, the District Court held a disposition hearing. On October 18, 2012, the District Court entered an order of revocation and sentenced Piller to ten years at MSP with five years suspended, and reimposed the following 14 new conditions on his suspended sentence:

> 1. The Defendant will enter and successfully complete sex offender treatment with a MSOTA clinical member or associate member with supervision, or equivalent, who is approved by the State and the Probation Officer and at his own expense. The Defendant shall abide by all treatment rules and recommendations of his treatment provider.

4

2. The Defendant shall not frequent places where children congregate. This includes but is not limited to: schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, holiday festivities, or any other place or function where children are present or reasonably expected to be present unless accompanied by an approved and appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and approved by his Probation Officer and sex offender treatment provider. The Defendant shall obtain permission from his Probation Officer prior to going to any of the above places.

3. The Defendant will not access or have in his possession or under his control any material that describes or depicts human nudity, the exploitation of children, consensual sex acts, non-consensual sex acts, sexual acts involving force or violence, including but not limited to; computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books literature, writings, etc. without prior written approval of his Probation Officer and therapist. The Defendant will not frequent adult book[ ] stores, topless bars, massage parlors or use the services of prostitutes.

4. The Defendant will not view television shows or motion pictures, which are geared towards his sex offending cycle, or as a stimulus to arouse deviant thoughts or fantasies. (i.e., shows based on sexualization of underage girls or boys, etc.)

5. The Defendant shall not have access to the Internet without prior permission from his Probation Officer and sex offender therapist. If the Internet access is allowed, the Defendant must allow the Department of Corrections to install rating control software and conduct random searches of the hard drive for pornography or other inappropriate material nor shall he have on any computer he may own, any software that is intended for data elimination, encryption or hiding data.

6. The Defendant shall not involve himself in any type of employment, service or recreational pursuit that involves the supervision of children. Under no circumstances should the Defendant be in a position of power and authority over children.

7. Pursuant to MCA 46-18-255 (1), the Defendant shall be subject to reasonable employment or occupational . . . prohibitions and

restrictions designed to protect the class or classes of persons containing the likely victims of further offenses.

8. The Defendant's residence, changes and any co-habitants must have prior approval of his Probation Officer. The Defendant will not reside in a residence where there are any children under the age of 18 without the written approval of his therapist and Probation Officer.

9. The Defendant shall not access "900" number telephone sex lines and shall have a "900" number block on his telephone.

10. The Defendant will not have a cell phone, or such other technology/device, with photo, video, or Internet capabilities allowed. If a cell phone is used, all bills and records will be made available to the Probation Officer.

11. The Defendant shall remain in Aftercare or Relapse Prevention Class for the entirety of his supervision unless released at the discretion of the Probation Officer and therapist.

12. The Defendant shall reenter treatment at any time if deemed appropriate by the Probation Officer and therapist.

13. The Defendant shall submit to annual polygraph testing.

14. The Defendant will not date, live with, or otherwise align himself with any person with children under the age of 18 without the express prior approval of his therapist and Probation Officer. If this approval is granted, they shall both be involved with his treatment to the extent that his treatment provider recommends.

¶10    Piller appeals the imposition of the 14 new conditions placed on his suspended sentence.

**STANDARD OF REVIEW**

6

¶11 We review a criminal sentence only for legality—that is, whether the sentence falls within the statutory parameters. *State v. Tirey*, 2010 MT 283, ¶ 19, 358 Mont. 510, 247 P.3d 701.

**DISCUSSION**

¶12 *Whether the imposition of 14 new conditions on Piller's suspended sentence for a 1988 crime violates ex post facto principles.*

¶13 Piller argues that the 14 new conditions imposed on his suspended sentence upon the revocation of his original sentence violate ex post facto principles because they were not authorized by the revocation statute in effect at the time of his offense in 1988, § 46-18-203, MCA (1987). The statute at that time allowed a judge or magistrate to revoke the suspension and order the person to serve the remainder of his prison term or continue the suspended sentence under the original terms. *State v. Leistiko*, 256 Mont. 32, 35-36, 844 P.2d 97, 99 (1992).

¶14 The revocation statute was later amended to allow district courts greater discretion at a revocation hearing. Under the amended statute, a district court could "continue the suspended sentence with modified or additional terms and conditions," or order "the defendant to serve either the sentence imposed or any lesser sentence." Section 46-18-203(7)(b)-(c), MCA (1991). In 2001, the statute was made expressly retroactive, allowing district courts to impose additional or different conditions on the suspended sentences at revocation of all parolees under the jurisdiction of the Department of Corrections. 2001 Mont. Laws, ch. 493, § 10.

7

¶15 Piller bases his ex post facto argument on the simple premise that the law in effect at the time of the crime controls as to the possible sentence, as well as the revocation of that sentence. *State v. Goff*, 2011 MT 6, ¶ 18, 359 Mont. 107, 247 P.3d 715 (citing *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297). Piller further argues that "[d]istrict courts cannot apply a sentencing statute enacted after the commission of an offense because to do so violates the prohibition on ex post facto laws." *State v. Southwick*, 2007 MT 257, ¶ 25, 339 Mont. 281, 169 P.3d 698 (citing *State v. Gone*, 179 Mont. 271, 280, 587 P.2d 1291, 1297 (1978)). As it would pertain to the facts of this case, Piller's argument is misplaced.

¶16 Both the United States Constitution and the Montana Constitution prohibit the imposition of ex post facto laws. Article I, Section 9 of the United States Constitution states: "No Bill of Attainder or ex post facto Law shall be passed." Article II, Section 31 of the Montana Constitution states: "No ex post facto law . . . shall be passed by the legislature."

¶17 Montana adopted federal ex post facto jurisprudence and applied it to the ex post facto clause of the Montana Constitution[2] in *State ex rel. Nelson v. Ellsworth*, 142 Mont. 14, 380 P.2d 886 (1963). The defendant in *Ellsworth* argued that a law passed after the commission of his offense which delayed his parole eligibility was ex post facto as applied to him. We adopted the definition of ex post facto laws as set forth in the 1798 United States Supreme Court case, *Calder v. Bull*, 3 U.S. 386, 1 L. Ed. 648 (1798):

---

[2] The 1889 Montana Constitution, as interpreted in *Ellsworth* in 1963, contained substantially the same prohibition on ex post facto laws as our current Montana Constitution: "No expost facto law . . . shall be passed by the legislative assembly." Mont. Const. (1889) art. III, § 11.

8

> Laws under the following circumstances are to be considered ex post facto laws within the words and intent of the prohibition: 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was when committed. 3d. *Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed*.

*Ellsworth*, 142 Mont. at 19, 380 P.2d at 888 (quoting *Calder v. Bull*, 3 U.S. at 390, 1 L. Ed. at 650) (emphasis added). We held that the new law delaying parole eligibility increased the defendant's punishment and was therefore ex post facto as applied to him. *Ellsworth*, 142 Mont. at 20, 380 P.2d at 889.

¶18    Piller argues that his October 15, 2012 sentence must be governed by the 1987 version of § 46-18-203, MCA, because that was the revocation statute that was in effect at the time of his original offense in 1988. Essentially, Piller contends our analysis should go no further than applying the law in effect at the time of the crime to control the possible sentence, citing *Goff*, ¶ 18. The State argues that because the 2001 amendments to § 46-18-203, MCA, were expressly made to apply retroactively[3] to all "offenders who are under the custody or supervision of the department of corrections," 2001 Mont. Laws, ch. 493, § 10, Piller should be subject to the 14 new conditions added to his suspended sentence at revocation under traditional ex post facto jurisprudence. The State points out that Piller's sentence as a whole was not made more punitive because he was always subject to his original 30 year prison term, and his current sentence allows him to serve the remaining five years on parole rather than incarcerated.

---

[3] "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA.

¶19    In *State v. Griffin*, 2007 MT 289, 339 Mont. 465, 172 P.3d 1223, we upheld a modification to the defendant's suspended sentence under a subsequent version of § 46-23-1011(4), MCA, because the modification, which required participation in the Intensive Supervision Program, was "not punitive in nature." *Griffin*, ¶ 19. *Griffin* is similar to the instant case in that a sex offender was challenging the imposition of different conditions on his suspended sentence. *Griffin*, ¶ 12.

¶20    Similarly, in *State v. Tirey*, 2010 MT 283, 358 Mont. 510, 247 P.3d 701, we upheld changes to parole conditions at a revocation, holding: "[T]he mere fact that the original sentence imposed had only conditions A, B, and C while the sentence at revocation has conditions A, B, C, D, and E does not necessarily mean that the sentence at revocation is greater." *Tirey*, ¶ 27. While reiterating that "[t]he law in effect at the time an offense is committed controls as to the possible sentence for the offense, as well as the revocation of that sentence," *Tirey*, ¶ 26, we nevertheless held that under the 1995 version of our revocation statute, § 46-18-203(7)(c), MCA (1995), the district court could impose new conditions, provided it did not increase the defendant's punishment. We noted:

> A proper analysis requires that we look at the substance of the conditions to determine whether they are punitive in nature. . . . Secondly, the new conditions must be reviewed in the context of the entire sentence. That is, whether the defendant's overall sentence is the same or whether the defendant is being sentenced to more or less punishment than the sentence originally imposed.

*Tirey*, ¶ 28.

¶21 In *State v. Claassen*, 2012 MT 313, 367 Mont. 478, 291 P.3d 1176, we applied the retroactive provision of our revocation statute, § 46-18-203(9), MCA (2011), in upholding a change in a sex offender's tier-level designation made at a revocation proceeding. We addressed application of the 2011 version of the law as follows:

> The State argues that because Claassen committed the underlying offense between December 2002 and September 2003, the 2001 version of the MCA governs his original sentence and his revocation. However, § 46-18-203, MCA (2011), contains an express retroactivity provision. Therefore, all references to § 46-18-203, MCA, are to the 2011 version. Because we generally apply the law in effect at the time a crime was committed, *State v. Stoner*, 2012 MT 162, ¶ 12, 365 Mont. 465, 285 P.3d 402, all other statutory references in this Opinion are to the 2001 MCA.

*Claassen*, ¶ 24, n.2.

¶22 We reinforce that a sentence must fall within the parameters provided by the applicable statute at the time of the offense. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, 983 P.2d 937. However, a law with a retroactive applicability date does not per se violate ex post facto principles as Piller suggests. "[S]imply because a statute operates on events antecedent to its effective date does not make the statute *ex post facto*." *State v. Mount*, 2003 MT 275, ¶ 67, 317 Mont. 481, 78 P.3d 829 (citations omitted). Rather, as we first articulated in *Ellsworth*, "Every law *that changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime when committed," is ex post facto. *Ellsworth*, 142 Mont. at 19, 380 P.2d at 888 (emphasis in original). Relevant to the issue presently before us, "A proper analysis requires that we look at the substance of the conditions to determine whether they are punitive in nature." *Tirey*, ¶ 28.

11

¶23 In analyzing whether the 14 new conditions imposed on Piller's sentence are ex post facto, we must determine whether or not the conditions themselves inflict a greater punishment. The 14 additional conditions placed on Piller's suspended sentence are standard conditions for sex offenders placed on parole. We have previously held that standard conditions placed on a sex offender's suspended sentence "are not punitive in nature." *Tirey*, ¶ 29. Furthermore, Piller conceded at oral argument that the new conditions are non-punitive. Looking at the sentence as a whole, Piller's ten year sentence with five years suspended received at revocation—including the 14 new parole conditions—is no greater than the 30 years of incarceration to which he was sentenced in 1988 (of which Piller served approximately 20 years). *Tirey*, ¶ 28; § 46-18-203(7), MCA (if a defendant has violated terms of parole, at revocation a district court may impose any sentence that could have been originally imposed that does not include a longer imprisonment or commitment term than the original sentence).

## CONCLUSION

¶24 The 14 additional conditions imposed on Piller's sentence at revocation were authorized pursuant to the 2011 version of our revocation statute, § 46-18-203, MCA. Because the conditions are not punitive in nature, they are not ex post facto. Accordingly, we affirm the District Court's imposition of the 14 additional conditions placed on Piller's suspended sentence at revocation.

¶25 This matter is remanded to the District Court for modification of the written revocation order to reflect that Piller is granted credit for time served in the amount of 486 days.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE