*782 ***60 ¶1 In 2014, DNA testing linked Ronald Dwight Tipton to the 1987 unsolved rape of an eight-year-old Billings girl. The State charged Tipton with sexual intercourse without consent of a minor under 16 years old. Tipton sought dismissal of the charges because the applicable statute of limitations had expired. The Thirteenth Judicial District Court denied Tipton's motion to dismiss. It determined that § 45-1-205(9), MCA, passed after the statute of limitations for the charged crime had expired, revived the otherwise time-barred prosecution. Tipton petitions this Court for a writ of supervisory control. We grant the petition and reverse the District Court's order. We restate the issues as follows:
(1) Whether § 45-1-205(9), MCA, applies retroactively;
(2) Whether applying § 45-1-205(9), MCA, to Tipton violates the ex post facto provisions of the Montana or United States Constitutions.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 During the early morning hours of March 20, 1987, eight-year-old L.T. was asleep in her home in Billings when an unknown male woke her. He gagged her with a cloth belt and threatened to kill her if she did not keep quiet. The stranger proceeded to rape L.T. orally, vaginally, and anally. The man then covered L.T.'s head with a pillow and fled from the home. After the man left, L.T. woke her parents and told them what had happened.
¶3 The Billings Police Department responded immediately and the investigation moved quickly. Eight months later, a jury convicted Jimmy Ray Bromgard of the crime, based on substantial evidence, including L.T.'s description and identification of Bromgard as her attacker, testimony that Bromgard had not returned home that night until the early morning hours, and the recovery of the victim's parents' stolen checkbook near Bromgard's home. State v. Bromgard , 261 Mont. 291, 862 P.2d 1140 (1993). Bromgard was sentenced to forty years in prison. The case was considered closed.
¶4 At the time of the crime, investigators recovered a pair of L.T.'s ***61 underwear stained with bodily fluids from her attacker. The evidence did not undergo DNA testing at that time, but was preserved. In 1994, this Court upheld the use of DNA evidence for the first time in a criminal trial in Montana, seven years after the crime at issue here. See State v. Moore , 268 Mont. 20, 31, 885 P.2d 457, 464 (1994). In 2002, upon the request of Bromgard, the biological material from the underwear underwent DNA testing. The DNA test proved conclusively that Bromgard had not committed the crime. Bromgard was released after additional court proceedings, and the Billings Police Department reopened the case.
¶5 Shortly after Bromgard's release, the DNA profile recovered from L.T.'s underwear was uploaded into the Combined DNA Index System known as CODIS. CODIS is a set of databases that allows law enforcement agencies to compare DNA profiles of forensic samples from unsolved cases with the DNA profiles of known offenders to generate investigative leads. The 1995 Legislature passed legislation requiring the Department of Justice to establish a central repository for DNA records for the State of Montana-what is now CODIS. See 1995 Mont. Laws ch. 251, § 2; Section 44-6-102, MCA. The Montana State Crime Lab uploaded its first DNA samples into CODIS in 2000.
¶6 The case remained open, but cold, until 2014. That year, Tipton submitted to DNA testing as part of a plea agreement to resolve felony drug charges against him in Meagher County. In November 2014, CODIS matched Tipton's DNA profile to the DNA profile recovered from L.T.'s underwear. Follow-up DNA testing confirmed that the *783 DNA from the underwear belonged to Tipton. In November 2015, within one year of the confirmed match, the Yellowstone County Attorney charged Tipton with three counts of sexual intercourse without consent in violation of § 45-5-503(3)(a), MCA (1985).
¶7 Tipton filed a motion to dismiss the charges because the statute of limitations for the crime had expired. At the time of the crime, the statute of limitations for rape was five years. See § 45-1-205(1)(b), MCA (1985). In 1989, just two years after L.T. was raped, the Legislature amended the statute to allow for prosecution up to five years after the victim turned eighteen, if the victim was a minor at the time of the offense. See 1989 Mont. Laws ch. 294, § 1; § 45-1-205 (1989). L.T. turned eighteen on May 8, 1996. The statute of limitations for the ***62 crime against her expired on May 8, 2001.[1] When the statute of limitations for L.T.'s rape expired, Bromgard was still in prison for the crime.
¶8 In 2007, the Legislature added subsection (9) to the general statute of limitations codified at § 45-1-205, MCA. 2007 Mont. Laws ch. 446, § 1. The new subsection states, "If a suspect is conclusively identified by DNA testing after a time period prescribed in subsection (1)(b) or (1)(c) has expired, a prosecution may be commenced within 1 year after the suspect is conclusively identified by DNA testing." Section 45-1-205(9), MCA. Subsections (1)(b) and (1)(c) provide the statutes of limitations for sexual crimes, including § 45-5-503(3)(a), MCA. The District Court held that § 45-1-205(9), MCA, applied retroactively to the charges against Tipton. Relying in part on the Dissent in Stogner v. California , 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003), the District Court also determined that the subsection did not violate the Ex Post Facto Clause. Because the County Attorney had filed charges within a year of the DNA identification, the District Court denied Tipton's motion to dismiss.
STANDARD OF REVIEW
¶9 This Court has supervisory control over all other courts in Montana, and may, on a case-by-case basis, supervise another court through a writ of supervisory control. Mont. Const. art. VII, § 2 (2); M. R. App. P. 14(3). Supervisory control is an extraordinary remedy and is appropriate when the normal appeals process is inadequate, when the case involves purely legal questions, and when one or more of the following exists: (1) the other court is proceeding under a mistake of law and is causing a gross injustice; (2) constitutional issues of state-wide importance are involved; or (3) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3). We review questions of statutory interpretation de novo. Sartain v. State , 2017 MT 216, ¶ 9, 388 Mont. 421, 401 P.3d 701. Alleged violations of the Ex Post Facto Clauses of the United States ***63 and Montana Constitutions are constitutional questions over which we exercise plenary review. State v. Brander , 280 Mont. 148, 150-51, 930 P.2d 31, 33 (1996).
DISCUSSION
¶10 The parties agree that this case satisfies the criteria for our review under a writ of supervisory control. The issue is purely a legal question of statutory and constitutional construction. See Stokes v. Mont. Thirteenth Judicial Dist. Court , 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754. Appeal would not be an adequate remedy because, if Tipton is correct, he is not subject to prosecution. See State ex rel. Booth v. Mont. Twenty-First Judicial Dist. , 1998 MT 344, ¶ 6, 292 Mont. 371, 972 P.2d 325. Finally, Tipton raises a constitutional question of state-wide importance: whether the State may prosecute cold cases in which DNA evidence has conclusively identified a suspect, but the statute of limitations expired before § 45-1-205(9), MCA, came into effect. We agree that this is *784 an appropriate case for review by supervisory control.
¶11 (1) Whether § 45-1-205(9), MCA, applies retroactively.
¶12 Tipton first argues that § 45-1-205(9), MCA, does not apply to revive statutes of limitations that expired before its passage. Tipton emphasizes that the 2007 amendment lacks any express legislative direction that it be applied retroactively as required under § 1-2-109, MCA.
¶13 Section 1-2-109, MCA, states, "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." This rule creates a strong presumption that laws do not have a retroactive effect unless the Legislature specifically states otherwise. See Mordja v. Mont. Eleventh Judicial Dist. Court , 2008 MT 24, ¶ 10, 341 Mont. 219, 177 P.3d 439. We have explained that not all statutes that draw on antecedent facts for their operation are retroactive, but that a statute is "retroactive" under the statute when it "takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions already past." Mordja , ¶ 18 (quoting State v. Coleman , 185 Mont. 299, 317, 605 P.2d 1000, 1012 (1979) (internal quotations and citations omitted) ). When the application of a statute does so, the Legislature must clearly express its intent for the statute to apply retroactively. State v. Hamilton , 2007 MT 167, ¶ 10, 338 Mont. 142, 164 P.3d 884. We must discern such an intent from the act itself and no other source. Hamilton , ¶ 10. The Legislature, however, "need not ***64 expressly state 'this act is retroactive.' Any language that shows a legislative purpose to bring about that result is sufficient." O'Shaughnessy v. Wolfe , 212 Mont. 12, 15, 685 P.2d 361, 363 (1984).
¶14 In Mordja , we determined that the extension of an unexpired statute of limitations was not "retroactive" under § 1-2-109, MCA, because the limitations period had been extended before the original statute of limitations expired and thus did not affect any of the defendant's vested rights or impose any additional detriments upon him. Mordja , ¶ 25. Unlike in Mordja , the statute of limitations for the offense against L.T. expired before the 2007 amendment took effect. But the language of § 45-1-205(9), MCA, shows a plain legislative intent that the statute applies retroactively. The subsection applies only if the statute of limitations already has run. The very purpose of the amendment was to authorize prosecution of a sex offense when DNA evidence positively identified an offender, even if the time had expired to file charges. We conclude that on its face the statute is retrospective in its operation.
¶15 (2) Whether applying § 45-1-205(9), MCA, to Tipton violates the ex post facto provisions of the Montana or United States Constitutions.
¶16 Tipton argues that if the statute applies retroactively to revive already expired statutes of limitations it violates the Ex Post Facto Clauses of the Montana and United States Constitutions. Tipton challenges subsection (9) as a violation of the Ex Post Facto Clause when applied to extend a statute of limitations that had expired before subsection (9) came into effect. Relying on Stogner v. California , Tipton argues that subsection (9), when applied to extend a limitations period that had expired before the subsection came into effect, threatens the kind of harm that the Ex Post Facto Clause seeks to avoid: "preventing governments from enacting statutes with 'manifestly unjust and oppressive ' retroactive effects." Stogner , 539 U.S. at 611, 123 S.Ct. at 2449 (quoting Calder v. Bull , 3 U.S. (3 Dall.) 386, 391, 1 L.Ed. 648 (1798) ). He argues that subsection (9) is indistinguishable for constitutional purposes from the statute struck down in Stogner under similar circumstances and thus falls into the second category of laws that Justice Samuel Chase explained in Calder the Ex Post Facto Clause prohibits. Tipton concludes that the expiration of the statute of limitations in this case vests him with a complete defense to prosecution, which cannot be resurrected by a subsequently enacted statute.
¶17 The State conceded at oral argument that the United States Supreme Court's decision in Stogner controls the outcome of this *785 case, ***65 unless it can be distinguished. The State argued that the Stogner Court articulated three bases underlying its decision: (1) that the statute threatens the kinds of harm that the Ex Post Facto Clause seeks to avoid; (2) that the statute "falls literally within the categorical descriptions of ex post facto laws set forth by Justice Chase more than 200 years ago in Calder v. Bull ," Stogner , 539 U.S. at 611, 123 S.Ct. at 2450 ; and (3) that numerous legislators, courts, and commentators have long believed that the Ex Post Facto Clause forbids resurrection of a time-barred prosecution. The State attempts to distinguish the holding in Stogner from this case on the first rationale; it argues that subsection (9) does not threaten the same type of harm that the statute at issue in Stogner threatened.
¶18 Article I, Section 10, of the United States Constitution and Article II, Section 31, of the Montana Constitution prohibit the Legislature from enacting an "ex post facto law." The foundation for Ex Post Facto Clause analysis in the United States is Justice Chase's opinion in Calder v. Bull -written just a decade after the Constitution was ratified. Justice Chase explained that ex post facto , which literally means laws with retroactive effects, is a term of art that had an established meaning at the time of the framing of the federal constitution. Calder , 3 U.S. (3 Dall.) at 391. "Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law: The former, only, are prohibited." Calder , 3 U.S. (3 Dall.) at 391. Justice Chase explained, "The plain and obvious meaning and intention of the prohibition is ... that the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it." Calder , 3 U.S. (3 Dall.) at 390. More specifically, Justice Chase laid down four categories of laws that would violate the Ex Post Facto Clause as the Framers understood those words:
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.
Calder , 3 U.S. (3 Dall.) at 390.
¶19 Justice Chase drew these four categories from infamous cases ***66 from English history that typified the evils the Founders intended the Ex Post Facto Clause to prevent. See Calder , 3 U.S. (3 Dall.) at 389. Justice Chase explained that his categories also found support in early English legal writings; the Federalist Papers; and the state constitutions of Massachusetts, Maryland, and North Carolina. The United States Supreme Court has long relied on Justice Chase's categories as the "exclusive definition" of the Ex Post Facto Clause. See Collins v. Youngblood , 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). This Court, too, has relied on Justice Chase's categories when interpreting the Ex Post Facto Clause in our own state constitution. State v. Piller , 2014 MT 342A, ¶ 17, 378 Mont. 221, 343 P.3d 153.
¶20 Tipton raises a question of first impression for this Court: does a law that purports to revive an expired statute of limitations when a suspect is conclusively identified by DNA evidence violate the Ex Post Facto Clause when the statute of limitations for the charged crime expired before the statute came into effect? The United States Supreme Court addressed the nearly identical question in Stogner .
¶21 The defendant in Stogner challenged a California statute that revived otherwise time-barred prosecutions for sex-related child abuse if the prosecution began within one year of the victim reporting the abuse to the police and there was independent corroborating evidence of the allegation. See Stogner , 539 U.S. at 609, 123 S.Ct. at 2449. Stogner's two daughters reported to the police that Stogner had sexually abused them more than twenty years before, and a grand jury indicted him. The statute of limitations for *786 the alleged crimes had run long before the California Legislature passed the revival statute. Stogner challenged this revival of a statute of limitations as a violation of the Ex Post Facto Clause.
¶22 A majority of the Supreme Court agreed. The Court determined that the statute threatened the kind of harm that the Ex Post Facto Clause seeks to avoid. Stogner , 539 U.S. at 611, 123 S.Ct. at 2449. To demonstrate its reasoning, the Supreme Court first outlined the purposes the Ex Post Facto Clause serves. The Clause protects liberty by prohibiting statutes with "manifestly unjust and oppressive retroactive effects." It prevents "unfair and dishonest" legislation that deprives people of "fair warning" that they may be subject to prosecution and that they need to preserve evidence of their innocence. It protects against "arbitrary and potentially vindictive legislation." And it prevents the "erosion of the separation of powers." See Stogner , 539 U.S. at 611, 123 S.Ct. at 2449-50.
¶23 After listing the purposes that the Clause serves, the Supreme ***67 Court turned to Chase's opinion in Calder and its descriptions of laws that violate that Ex Post Facto Clause. The Stogner Court determined that the revival of an expired statute of limitations falls under Chase's second category in Calder : "Every law that aggravates a crime, or makes it greater than it was, when committed." Calder , 3 U.S. (3 Dall.) at 390. Relying on Chase's "alternative description," the Court held that prohibited laws include laws that "inflicted punishments, where the party was not, by law, liable to any punishment." Stogner , 539 U.S. at 612, 123 S.Ct. at 2450 (quoting Calder , 3 U.S. (3 Dall.) at 389 ) (emphasis omitted). The Court explained that "after (but not before) the original statute of limitations had expired, a party such as Stogner was not 'liable to any punishment.' " Stogner , 539 U.S. at 613, 123 S.Ct. at 2451 (quoting Calder , 3 U.S. (3 Dall.) at 389 ). The revival of an expired statute of limitations aggravated the crime because "it 'inflicted punishment' for past criminal conduct that (when the new law was enacted) did not trigger any such liability." Stogner , 539 U.S. at 613, 123 S.Ct. at 2451.
¶24 The Dissent in Stogner argued that "a law which does not alter the definition of the crime but only revives prosecution does not make the crime 'greater than it was, when committed' " and does not violate the Ex Post Facto Clause. Stogner , 539 U.S. at 633, 123 S.Ct. at 2461 (Kennedy, J., dissenting). The Dissent explained that the California statute at issue did not change the criminal quality, but only changed the timespan within which it could be charged. Stogner , 539 U.S. at 640, 123 S.Ct. at 2465 (Kennedy, J., dissenting). The Dissent accused the Court of not relying on Chase's categories, but on "alternatives," which the Dissent argued are descriptions of the categories' historical origins that Chase never intended as definitive descriptions of the laws prohibited by the Ex Post Facto Clause. Stogner , 539 U.S. at 641, 123 S.Ct. at 2465-66 (Kennedy, J., dissenting).
¶25 The Dissent also argued that the California statute did not offend the purposes of the Ex Post Facto Clause that the Court listed. The Dissent pointed out that the legislation was not arbitrary and vindictive, because the California legislature was motivated by legitimate concerns, such as the continued suffering of childhood sexual abuse victims and the problem of delayed reporting from such victims. Stogner , 539 U.S. at 649, 123 S.Ct. at 2469-70 (Kennedy, J., dissenting).
¶26 In rejecting the Dissent's arguments, the Court explained that a constitutional principle must apply not only in child abuse cases, but in every criminal case. Stogner , 539 U.S. at 631, 123 S.Ct. at 2460. The ***68 State may have important interests, but the constitutional interest predominates. The Court concluded that subjecting someone to prosecution after the expiration of the period of limitations withdraws a complete defense at the State's will, and that this is accurately characterized as unfair. Stogner , 539 U.S. at 632, 123 S.Ct. at 2461.
¶27 The State does not dispute the Supreme Court's analysis of the four Calder categories articulated by Justice Chase. Nor does it advocate that this Court adopt the Stogner Dissent's interpretation, as the District Court did. Rather, the State argues that *787 the heart of the Stogner opinion is that the harm the California statute threatened was the kind of harm the Ex Post Facto Clause seeks to avoid. The State argues that the harm caused in Stogner differs from the harm (or lack of harm) inflicted on Tipton.
¶28 The State argues that the statute Tipton challenges departs in meaningful ways from the statute struck down in Stogner. Section 45-5-205(9), MCA, revives an expired statute of limitations in only a very narrow class of cases: sex crimes in which DNA evidence positively identifies a suspect for the first time. The charges brought against the defendant in Stogner would not fall under this category. The State argues that there is not the same concern about stale evidence that existed in Stogner : Montana's statute requires that DNA evidence conclusively identify the suspect; the DNA evidence available now is stronger than any evidence that the State had at the time of its initial investigation; and most of the evidence from the original investigation was preserved. The State thus argues that § 45-1-205(9), MCA, is narrower, provides more safeguards, and does not inflict the same harm as the statute in Stogner .
¶29 The State's argument misses the mark. Ensuring fairness by preventing convictions based on stale evidence was not the main focus of the Supreme Court's decision in Stogner . Stogner did not discuss at all the evidentiary safeguards included in the California statute-requiring independent evidence that clearly corroborated the victim's report. Such safeguards were irrelevant because the California law "enabled punishment where it was not otherwise available in the ordinary course of law." Stogner , 539 U.S. at 614, 123 S.Ct. at 2451 (emphasis added) (internal quotations omitted). The harm that the Supreme Court identified in Stogner was not that evidence had gone stale, or that the State's case against the defendant was weak, or that the statute failed to provide sufficient safeguards, but rather that it had revived the government's expired ability to prosecute at all. The Supreme Court concluded "that a law enacted after expiration of a ***69 previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." Stogner , 539 U.S. at 632-33, 123 S.Ct. at 2461. This is the same harm that subsection (9) inflicts on Tipton.
¶30 The State protests that government has a compelling interest in pursuing and bringing to justice cases involving the violent rape of a child by a stranger. L.T.'s rape was a crime when it was committed, and it remains a crime today. Compare § 45-5-503, MCA (1985), with § 45-5-503, MCA (2017). The Legislature's repeated extensions of the statute of limitations, see n.1 supra , demonstrate that Montana considers the prosecution of these crimes against minors to be an important State interest. The State also points out that the punishment is not more burdensome, because Tipton could face only the punishment that was available in 1987 and not the higher sentences available under current law. Compare § 45-5-503(3)(a), MCA (1985) (providing that the sentence for sexual intercourse without consent when the victim is under 16 years old is "not less than 2 years or more than 40 years"), with § 45-5-503(3)(a) (2017) (providing that such offender can be sentenced to life in prison or "not less than 4 years or more than 100 years"). The State opines that fairness to the victim requires that this case be allowed to proceed.
¶31 The State emphasizes a number of factual differences between this case and Stogner : L.T. did not delay reporting the attack, and the crime was investigated and prosecuted promptly; the State and the victim both thought the perpetrator had been brought to justice; Tipton's connection surfaced only because he committed another felony; and technological advances in DNA testing have made evidence available today that was not available in 1987. The State argues, and the District Court held, that this is not the factual scenario the Supreme Court contemplated in Stogner .
¶32 The Supreme Court's decision in Stogner , however, leaves no room to balance the State's and the victim's interests against the defendant's constitutional right to be free from ex post facto laws. The State's argument mirrors the Stogner Dissent, which the Supreme Court emphatically rejected. See *788 Stogner , 539 U.S. at 632, 123 S.Ct. at 2461 ("As to the dissent's third argument, we agree that the State's interest in prosecuting child abuse cases is an important one. But there is also a predominating constitutional interest in forbidding the State to revive a long-forbidden prosecution.").
¶33 The facts of the case before us do differ in important respects from the facts in Stogner . But none of those differences distinguishes the ***70 cases for constitutional purposes. The Court in Stogner listed three features of the law that, "taken together, produce the kind of retroactivity that the Constitution forbids": (1) the law "created a new criminal limitations period that extends the time in which prosecution is allowed"; (2) "[i]t authorized criminal prosecutions that the passage of time had previously barred"; and (3) "it was enacted after prior limitations periods for [the] alleged offenses had expired." Stogner , 539 U.S. at 610, 123 S.Ct. at 2449. The Montana statute shares all three attributes with the statute struck down in Stogner . Thus, § 45-1-205(9), MCA, threatens the same constitutional harm when applied to Tipton that concerned the Supreme Court in Stogner : the revival of a statute of limitations enacted after the limitations period had expired. The Supreme Court carefully distinguished between extending expired limitations periods and unexpired limitations periods, finding only the former to violate the Ex Post Facto Clause. See Stogner , 539 U.S. at 613, 123 S.Ct. at 2451. Unlike in Mordja where we relied on Stogner to uphold the extension of an unexpired statute of limitations, this case presents an attempt to extend a statute of limitations that expired before the legislation was enacted, just like the statute rejected in Stogner . Strong as the societal interests are, Stogner offers no latitude to distinguish this case based upon any of the grounds the State raises. Simply put, the Supreme Court held that the expiration of a statute of limitations creates a conclusive presumption forbidding prosecution, and any alleged perpetrator is not liable to any punishment when the limitation period is extended after that expiration date has passed. See Stogner , 539 U.S. at 613-14, 123 S.Ct. at 2451.
¶34 The crime against L.T. more than thirty years ago was, and remains, a horrific, morally repugnant act that the people of Montana expect will be punished for the protection of the victim and society. The State's case against the alleged perpetrator is strong, and the scientific evidence is compelling. But the Supremacy Clause of the United States Constitution, see U.S. Const. art. VI, cl. 2, compels the judges of this State to apply the federal constitution as interpreted by the United States Supreme Court. Applying the rule of law from Stogner , as we must, the State's arguments fail. Stogner compels us to hold that the charges against Tipton must be dismissed. We conclude that § 45-1-205(9), MCA, violates the Ex Post Facto Clause when applied-as here-to cases in which the statute of limitations expired before subsection (9) came into effect.
¶35 THEREFORE, IT IS ORDERED that the petition for writ of supervisory control is GRANTED. The District Court's order is ***71 REVERSED and the case is remanded with instructions to grant Tipton's motion to dismiss the charges with prejudice.
We Concur:
JIM RICE, J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.
RIENNE H. MCELYEA, J.
District Court Judge Rienne H. McElyea sitting for Chief Justice Mike McGrath

The 2001 Legislature again extended the statute of limitations for sexual crimes against minors until ten years after the victim turns eighteen. 2001 Mont. Laws ch. 530, § 1. This extension did not go into effect until October 1, 2001, however-after the period of limitations applicable to L.T.'s rape already had expired. See § 1-2-201, MCA. The 2017 Legislature extended the statute of limitations for sexual crimes against minors until twenty years after the victim's eighteenth birthday. 2017 Mont. Laws ch. 413, § 1. It is undisputed that neither of these extensions applies to extend the statute of limitations in this case.