JUSTICE McKINNON
specially concurs and dissents.
¶84 The Court provides an exhaustive substantive due process analysis of the Act after “acknowledging the proverbial ‘elephant in the room,’ ” that “[m]arijuana is a Schedule I Controlled Substance under the federal Controlled Substances Act,” which criminalizes its cultivation and distribution. Opinion, ¶ 13. The Court correctly notes that the parties are not challenging the Act on the ground that it is preempted by federal law, Opinion, ¶ 13, and that “one stated purpose of the Act is to ‘provide legal protections to persons with debilitating medical conditions who engage in the use of marijuana to alleviate the symptoms of the debilitating medical condition.’ ” Opinion, ¶ 18 (citation omitted and emphasis added). The Court nevertheless fails to remain focused on this purpose for the legislation — to provide legal protections.
¶85 The State, pursuant to its police powers, may define what is and is not a criminal offense under the laws of Montana, including what constitutes a defense or immunity to a state prosecution. The Court’s analysis is led astray by Plaintiffs arguments that are incorrectly premised upon the purpose of the Act as being one of providing access to marijuana. Opinion, ¶ 29 (“The careful regulation of access to an otherwise illegal substance for limited use by persons for whom there is little or no other effective alternative serves a legitimate state objective.”).
¶86 Marijuana is a Schedule I controlled substance under § 50-32-222(4)(x), MCA. It is considered a dangerous drug under §§ 50-32-101(6), -202, MCA. Distribution includes selling, bartering, exchanging, *287 giving away, or offering to sell, barter, exchange, or give away. Section 45-9-101(1), MCA. The Act “provides exceptions to the illegality of distribution and possession, establishing certain privileges for those in compliance with' its provisions.” Med. Marijuana Grower’s Ass’n v. Corrigan, 2012 MT 146, ¶ 25, 365 Mont. 346, 281 P.3d 210 (emphasis added).
¶87 In enacting the Act, the Legislature sought to “provide legal protections to persons ... who engage in the use of marijuana to alleviate the symptoms of [a] debilitating medical condition.” Section 50-46-301(2)(a), MCA. The Legislature intended to “allow for the limited cultivation, manufacture, delivery, and possession of marijuana” and “allow individuals to assist a limited number of registered cardholders with the cultivation and manufacture of marijuana.” Section 50-46-30l(2)(b-c), MCA. Amounts that a registered cardholder may possess are limited, § 50-46-319, MCA, and places of use are similarly restricted, § 50-46-320, MCA. The Act provides that an individual “may not be arrested, prosecuted, or penalized in any manner” solely because “the individual cultivates, manufactures, possesses or transports marijuana in the amounts allowed under this section; or the registered cardholder acquires or uses marijuana.” Section 50-46-319(2), MCA. As previously explained by this Court, “the legislature, in its exercise of the State’s police powers, decided that it would legalize the limited use of medicinal marijuana while maintaining a prohibition on the sale of medical marijuana.” MCIA I, ¶ 21.
¶88 States use their inherent police powers to create crimes and also defenses, exceptions, or immunities to those crimes. The “State of Montana has a police power by which it can regulate for the health and safety of its citizens.” Wiser v. State, 2006 MT 20, ¶ 19, 331 Mont. 28, 129 P.3d 133 (citing State v. Skurdal, 235 Mont. 291, 294, 767 P.2d 304, 306 (1988)). Certain statutory provisions create affirmative defenses, exceptions, or immunities to crimes which grant defendants a limited immunity from prosecution. See generally State v. Archambault, 2007 MT 26, 336 Mont. 6, 152 P.3d 698. For instance, justifiable use of force provisions, §§ 45-3-101 through -115, MCA, create an affirmative defense to actions that would otherwise constitute crimes. Human trafficking statutes provide another example of immunity and an affirmative defense provided to a child who is a victim. Sections 45-5-709, -710, MCA. Further, by its terms, § 45-8-109(3), MCA, provides a variety of exceptions to a charge of civil disorder, including actions of a peace officer committed during performance of their duties; training in nonviolent civil disobedience *288 techniques; lawful self-defense or defense of others or an activity intended to teach or practice self-defense or self-defense techniques; or training in safe firearm handling and use. Under § 45-6-203, MCA, a person qualified to appraise or audit property for property tax purposes, a person qualified to survey land to delineate boundaries, or a firewarden exercising their duty are excepted from prosecution for criminal trespass by §§ 15-7-139, 70-16-111, and 76-13-116, MCA. Finally, under § 45-8-206(2)(a), MCA, it is a defense to the crime of public display or dissemination of obscene material to minors to have had reasonable cause to believe the minor was 18 years of age.
¶89 Given that marijuana is illegal and the State, in the exercise of its police powers, has carved out a “legal protection” to a state prosecution for violation of Montana’s controlled dangerous substance laws, I cannot agree that the statute creates any sort of classification of persons necessary for an equal protection challenge or any substantive right necessary for a substantive due process challenge. The Court states that the Act concerns “a group of persons who all suffer from a debilitating medical condition but are distinguished by the manner in which they may obtain relief. Some may be treated effectively with pharmaceutical drugs” and for others, “marijuana is the sole or most effective treatment.” Opinion, ¶ 17. However, the Act simply fails to make any of the distinctions between “groups” which the Court implicitly considers. The Act does not provide marijuana for one group of persons and withhold it from another group; it does not distinguish based upon type of prescription medication; and it does not distinguish based upon who is able to grow marijuana. The Act does, however, provide a benefit or privilege — not a right — to those using marijuana for medical purposes and correspondingly defines, as the State may do, the parameters of a defense for violation of Montana’s controlled dangerous substance laws.[1]
¶90 To prevail on an equal protection challenge, the plaintiff “must demonstrate that the law at issue discriminates by impermissibly classifying individuals and treating them differently on the basis of that classification.” Egdorf, ¶ 15 (citation omitted). A plaintiff must first show that the challenged law creates a classification between two *289 classes which are otherwise similarly situated. Farrier, ¶ 15. If a plaintiff is unable to show that the challenged law creates such a classification among similarly situated individuals, the inquiry ends and the court need not apply rational basis review. See Powell, ¶ 22 (“If the classes at issue are not similarly situated, then the first criteria for proving an equal protection violation is not met and we need look no further.”). To the extent the Court finds that the Act creates two groups of persons who are “distinguished by the manner in which they may obtain relief,” I disagree. The Act provides limited “legal protections” to those who use marijuana for medical purposes; all other persons are using marijuana in violation of state law.[2]
¶91 After correctly concluding that the Act “does not create two legitimate classes for an equal protection challenge,” Opinion, ¶ 18, the Court is led afield when it conducts an exhaustive substantive due process analysis. I disagree with the Court’s conclusion that Plaintiffs challenges are appropriately analyzed under Montana’s due process clause. Opinion, ¶ 19. The Court separates the various provisions of the Act and asks itself whether a legal protection which benefits medical marijuana users, is either “arbitrary or unreasonable” or is “rationally related to the recognized legitimate government objectives of the Act.” Opinion, ¶ 33.
¶92 Both the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. “Substantive due process primarily examines the underlying substantive rights and remedies to determine whether restrictions ... are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute.” Newville, 267 Mont. at 249, 883 P.2d at 800 (citation omitted); see also Egdorf, ¶ 19. The concept of substantive due process refers to “the ability of government to restrict the freedom of action (regarding life, liberty, or property) of all persons.” Rotunda & Nowak, supra § 15.4(a) at 823-24 (emphasis added). A substantive due process analysis must *290 begin with a careful description of the asserted right, for the “doctrine of judicial self-restraint requires that we exercise the utmost care whenever we are asked to break new ground in this field.” Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992). The United States Supreme Court has held that due process specially protects the right to marry, to have children, to direct the education and upbringing of one’s children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment. Wash. v. Glucksberg, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997) (citations omitted).
¶93 In explaining the nature of a substantive due process claim, the Supreme Court has:
[AJlways been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.
Glucksberg, 521 U.S. at 720, 117 S. Ct. at 2267-68 (internal quotation marks and citations omitted). A “careful description of the asserted fundamental liberty interest” is required and a court must decide whether the asserted liberty interest, as described, is “objectively, deeply rooted in this Nation’s history and tradition” and “implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.” Glucksberg, 521 U.S. at 720-21, 117 S. Ct. at 2268 (internal quotation marks and citations omitted). In Glucksberg, four physicians representing three anonymous, terminally-ill patients challenged a state law prohibiting assisted suicide. They argued that the patients had a fundamental right to choose medical treatment that included assistance in committing suicide. The Court rejected this argument, stating that, in previously holding that individuals have a fundamental “right to refuse unwanted medical treatment,” that holding could not “be somehow transmuted into a right to assistance in committing suicide.” Glucksberg, 521 U.S. at 725-26, 117 S. Ct. at 2270 (citation omitted).
¶94 Applying this analysis, many other courts have held that smoking, using, possessing, or manufacturing marijuana is not a substantive due process right. See Raich v. Gonzales, 500 F.3d 850, 864-66 (9th Cir. *291 2007) (holding that, where the plaintiffs asserted fundamental right was “the right to use marijuana to preserve bodily integrity, avoid pain, and preserve her life,” that “federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering” because the alleged right was neither “fundamental” nor “implicit in the concept of ordered liberty”) (internal quotation marks and citations omitted); U.S. v. White Plume, 447 F.3d 1067, 1074-76 (8th Cir. 2006) (holding that there is no substantive due process right to farm hemp, which, like marijuana, contains tetrahydrocannabinol or THC); U.S. v. Maas, 551 F. Supp. 645, 647-48 (D.N.J. 1982) (“Smoking marijuana receives no explicit or implicit constitutional protection. The act of smoking does not involve the important values inherent in questions concerning marriage, procreation, or child rearing. Moreover, its use predominantly as a ‘recreational drug’ undercuts any argument that its use is as important as, e.g., use of contraceptives”) (citations omitted); U S. v. Wash., 887 F. Supp. 2d 1077, 1102 (D. Mont. 2012).
¶95 We clearly stated in MCIA I, that Plaintiffs “cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the [federal] Controlled Dangerous Substances Act.” MCIA I, ¶ 32 (citations omitted). Plaintiffs have no right or claim to “access” marijuana; rather the State has chosen to provide a benefit to those medical marijuana users who comply with the terms of the Act. It cannot reasonably be argued that there is a “substantive right” to possess a substance illegal under both federal and state law.
¶96 I thus disagree with the premise implicit in the Court’s approach — namely, that it is appropriate to conduct a substantive due process analysis of a “legal protection” allowed in a state criminal prosecution which has the purpose of providing a benefit or privilege — as compared to a deprivation — to medical marijuana users. These proceedings are not proceedings in which a defendant has attempted to mount a defense to a criminal prosecution by invoking the Act’s limited protections. Plaintiffs have alleged constitutional challenges premised on a right of access to marijuana. To the extent we have addressed these challenges with a far-reaching constitutional analysis — inappropriate outside the context of a criminal proceeding invoking the protections of the Act — I am concerned that we have distorted our constitutional jurisprudence.
¶97 In particular, we find that the remuneration restriction violates the equal protection clause, after earlier concluding that an equal protection analysis is undeserved, without even identifying the two *292 classes of persons we considered. We find that a patient who is unable to grow marijuana on her own is set apart. Opinion, ¶ 55. We conclude, without any analysis, that such a prohibition is not encompassed within the Act’s legitimate objectives. Opinion, ¶ 55. We cherry pick a provision from the Act that we find offensive and, not surprisingly, are completely unable to support it with an appropriate constitutional analysis. Such a policy preference for members of this Court is precisely the danger inherent in expanding substantive due process to an interest that is neither a substantive nor a fundamental right.
¶98 Marijuana is a controlled dangerous substance under federal and Montana law. The State, pursuant to its police powers, may define what is and is not a criminal offense under state law, including defining what constitutes a defense or immunity to a state prosecution. The Legislature, through the provisions of the 2011 Montana Marijuana Act, chose to carve out and define a defense to a state prosecution for marijuana possession. I would uphold all provisions of the Act as related to this exercise of police power.

 Physicians do not “prescribe” marijuana under the Act, but instead provide a “written certification.” Section 50-46-310, MCA. Thus, medical marijuana is not a prescribed drug which, if the State prohibited all persons from using, might serve as a basis for a substantive due process challenge. The Court appears to imply medical marijuana is a prescribed drug, the prohibition of which implicates due process concerns. See Opinion, ¶ 18.

 The potential that some individuals who are eligible to use marijuana under the Act may not be able to grow marijuana themselves or locate a provider does not establish a class, as Plaintiffs argue, and is insufficient to prove an equal protection violation. Again, the purpose of the Act is to provide legal protections. The idea that some medical marijuana users who are unable to grow their own marijuana creates a class for purposes of an equal protection violation is akin to an argument that homeless people create a class because they sire unable to raise a defense pursuant to Montana’s “castle doctrine,” § 45-3-103, MCA.